Jones, J.
 

 Two legal propositions are presented by the general demurrer. It is conceded by the demurrer that the number of signatures to the petitions was sufficient had the board counted as valid the 1,586 signatures of those who had not voted in the municipal election of 1931, and also the 375 signatures of the
 
 *176
 
 voters of the municipality, who, though registered upon the permanent registration records, had failed to transfer their registration. If these two classes constitute valid signatures, the general demurrer should be overruled, otherwise it should be sustained.
 

 The salient portion of Section '6 of the Akron municipal charter relating to signatures on nominating petitions is as follows: “Such petition shall be signed by at least ten per centum (10%) of the electors who voted at the last regular municipal election of the city at large.”
 

 It is conceded that 51,190 electors voted at the last regular municipal election in 1931. The legal contention of the relator is that he is only required to have 10 per cent., or 5,119 signatures, of registered electors, whether such electors did or did not vote at the previous election. The claim of the respondents is, and they so held, that this 10 per cent, must be confined to those electors who actually voted at that election.
 

 While there may be some ambiguity in the language of the charter provisions, it is susceptible of the interpretation that the language employed was intended to mean 10 per cent, of the number of electors who voted at that election. The provision does not stipulate that it must be 10 per cent, of the “identical” electors, or of the “same individual” electors, who voted at such election. And there are many reasons why the interpretation claimed by relator’s counsel should be sustained by the court. The number of electors who voted at the prior municipal election is easily ascertainable from the official records of the secretary of state, while the effort to obtain the names of those who actually voted in the several precincts involves a tedious process. Furthermore, unless abridged by constitutional or statutory limitations, the electoral rights of the citizen should be held to be equal, and a liberal interpretation should be given in order to effectuate that purpose. The - registered electors in a municipality,
 
 *177
 
 whether they did or did not vote at the previous municipal election, are equally interested in the choice of future municipal candidates. The interpretation sought by counsel for the respondents would deny the right of signing to registered electors who, because of sickness or absence, had failed to vote; and also to those who, becoming of age or moving into the city since the last election, had complied with the registration laws. In
 
 State, ex rel. Thompson,
 
 v.
 
 Board of Elections of Montgomery County,
 
 122 Ohio St., 278, 171 N. E., 315, we had before us a statute (Section 4785-70, General Code) involving language very similar to that of the Akron charter. For nominating petitions in counties or districts larger than a county, the statute permitted the optional method of securing signatures either of one hundred electors or of “five per cent of the electors who voted for the party candidate for governor at the next preceding regular state election.” The legal question here involved was not there decided, and the case is referred to only for the purpose of showing that legislation of this character may apply to district or state as well as to municipal officers. It will readily be seen that it would be much more difficult to ascertain the percentages were candidates relegated to any method other than one easily ascertainable by the official count.
 

 Judges Allen, Jones and Matthias are therefore clearly of the opinion that it was the manifest intention of the charter that the 10 per cent, applied to the number of electors officially found to have voted at the last municipal election, and not to the identical electors who had actually voted, as contended for by counsel for the respondents. With said interpretation Judges Weygandt, Stephenson and Bevis do not agree.
 

 Three hundred and seventy-five signatures to the petitions, invalidated by the respondents, were signatures of those whose addresses were not the same as
 
 *178
 
 appeared upon the permanent registration recoids; these electors had not transferred their registration as required by statute. Article V, Section 7, of the state Constitution, reads: “All nominations for elective * * * municipal offices shall be made at direct primary elections or by petition as provided by law.” This provision of the Constitution was discussed in the case of
 
 Fitzgerald
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338, and particularly by Donahue, J., on page 391, 103 N. E., 512, Ann. Cas., 1915B, 106.
 

 The state had an undoubted right to prescribe registration requirements. The state did so, and passed various laws in respect to registration. The city charter contained no provision in respect thereto, and therefore any question of conflict between the charter and state law does not arise. Section 4785-34, General Code (114 Ohio Laws, 686), provides: “No person residing in any registration precinct shall be entitled to vote at any election, or to sign any
 
 declaration of candidacy,
 
 nominating, initiative, referendum or recall petition, unless he is duly registered as an elector in the manner provided herein.” Other sections of the statute permit changes of registration by transfer, previous to an ensuing election. Those electors whose signatures were invalidated were duly registered as electors upon the permanent registration lists, and in that respect had fully complied with the statute; for the statute merely prescribes that they be “duly registered as an elector” and contains no specific stipulation in respect to transfer.
 

 Judges Allen, Bevis, Jones and Matthias are therefore of the opinion that an elector, otherwise qualified, whose name appears upon the permanent registration list, may sign a petition for nomination, although at' the time he has not transferred his registration on the permanent lists; they are of opinion that said signatures were valid and the petitions sufficient.
 

 
 *179
 
 It is claimed by the respondents that these questions are not justiciable. It may be conceded that elections belong to the political branch of the government and are not of judicial cognizance, but are- matters for political regulation. However, if officials of the political department of the government are guilty of fraud, corruption or gross abuse of discretion, or if they misinterpret the provisions, of the constitution, or of a statute or municipal charter, affecting the status of a candidate or of an elector, the six judges participating in this case are of the opinion that such a case becomes one of judicial cognizance. While this phase has not heretofore been directly decided, this court has taken judicial cognizance where the cause necessitated the interpretation of our Constitution and laws.
 
 State, ex rel. Graves,
 
 v.
 
 Bernon et al., Bd. of Elections,
 
 124 Ohio St., 294, 178 N. E., 267;
 
 State, ex rel. Patton,
 
 v.
 
 Myers, Secy. of State, ante,
 
 95, 186 N. E., 872;
 
 State, ex rel. Donnelly,
 
 v.
 
 Myers, Secy. of State, ante,
 
 104, 186 N. E., 918.
 

 Since but six judges participated in the hearing of this case, three being in favor of allowing, and three in favor of denying, the writ, it becomes manifest that the writ must be denied.
 

 Writ denied.