By The Court.
 

 It is alleged, as grounds for the issuance of the writ, that the refusal of the board to place relator’s name on the primary ballot constituted a failure to perform an official duty; that the action of the board was “arbitrary, illegal and an abuse of discretion, and without authority of law; and * * * relator has no adequate remedy at law.” The relator does not allege fraud or corruption on the part .of the board.
 

 Where a candidate files more than one petition form at the same time and the petition forms in the aggregate contain more than five names, has the candidate complied with Section 4785-70, General Code (122 Ohio Laws,-), effective January 2, 1948, which provides
 
 *195
 
 the manner a candidate at a primary election for state central or county central committeeman can and must qualify?
 

 The pertinent part of Section 4785-70, General Code, provides as follows:
 

 “Provided, however, that a petition filed with a declaration of candidacy of a candidate for election as a member of the state central committee or the county central committee of a political party shall be signed by five, but not more than five, qualified electors ■ of the district, county, ward, township or precinct within which electors may vote for such candidate. The electors signing such petition shall be members of the same political party as the political party of which the candidate is a member. They shall sign such petition in the presence of a notary public or other official authorized by law to administer oaths, and such official shall certify thereon that each of such signatures was placed thereon in his presence.”
 

 That section prescribes clearly that such a petition ‘ ‘ shall be signed by five, but not more than five, qualified electors.” For certain offices the General Assembly has allowed a latitude between the minimum number of signatures required and the maximum number permitted, but with regard to state central or county central committeeman, the General Assembly has clearly expressed its intent that such a petition “shall be signed by five, but not more than five, qualified electors.”
 

 The fact that the signatures were on more than one petition form does not affect the issue. All petition forms filed by a candidate are regarded as his petition, whether such petition consists of' one or more than one form. Otherwise, in some instances, where a minimum of 1,000 signatures is required, it would be impossible for a candidate to file one petition form containing the minimum number of signatures because
 
 *196
 
 the official petition form issued by the Secretary of State provides blank spaces for a maximum of only 25 signatures. Considering, as we must, the two petition forms in the instant case as one petition, it contains more than the statutory maximum of five signatures, and the board, on discovering that fact, rejected the relator’s petition and declaration of candidacy.
 

 However, the relator contends that the board should have selected one of his petition forms and regarded the other as surplusage. The burden of complying with the statute rests on the candidate, and it is his ■duty to decide oh which of several filed petition forms he will stand. Such duty and responsibility cannot be shifted to the board.
 

 With respect to hearings before the board after a protest has been filed against the candidacy of any person filing a declaration of candidacy, Section 4785-70, General Code, provides that the determination of the board “-shall be final.”
 

 In the case of
 
 Sullivan
 
 v.
 
 State, ex rel. O’Connor,
 
 125 Ohio St., 387, 181 N. E., 805, it is stated in the opinion:
 

 1 ‘
 
 Through a long line of cases decided by this court it has become the settled principle that elections belong to the political branch of the government, and that therefore they are not
 
 per se
 
 the subject of judicial cognizance, and they have repeatedly been held to be matters for political regulation. * * *
 

 “By the repeated declarations of this court, allegations of fraud, corruption, or abuse of discretion must be specific.
 
 State, ex rel.,
 
 v.
 
 Eidgenoss, supra
 
 [108 Ohio St., 493, 141 N. E., 277];
 
 State, ex rel. Maxwell, Pros. Atty.,
 
 v.
 
 Schneider,
 
 103 Ohio St., 492, 134 N. E., 443. It has further been declared repeatedly that notwithstanding the decision of the board is declared to be final, it may nevertheless be reviewed if procured by fraud or corruption, or where there has been a
 
 *197
 
 flagrant misinterpretation of a statute, or a clear disregard of legal provisions applicable thereto.” See, also,
 
 State, ex rel. Columbus Blank Book Mfg. Co.,
 
 v.
 
 Ayres, Aud.,
 
 142 Ohio St., 216, 51 N. E. (2d), 636;
 
 Koehler
 
 v.
 
 Board of Elections,
 
 125 Ohio St., 251, 181 N. E., 107.
 

 Section 12283, General Code, provides as follows:
 

 “Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. ”
 

 There is no claim of fraud or corruption 'in this case, and the only possible basis for judicial intervention would be that the board flagrantly misinterpreted the statute, .or clearly disregarded an applicable legal provision. In our opinion, the board took cognizance of the applicable statute and did not disregard it, but, on the contrary, construed and applied it in accordance with its natural and fundamental meaning, thereby fully performing the act which the law specially enjoins as its duty.
 

 We hold, therefore, that because the relator has not established a clear, legal right to the issuance of a writ of mandamus, the demurrer is sustained and the writ denied.
 

 Writ denied.
 

 Turner, Matthias, Zimmerman, Sohngen and Stewart, JJ., concur.
 

 Weygandt, C. J., and Hart, J., dissent.