**DAYTON (City), Plaintiff, v. HORSTMAN et, Defendants.**

Common Pleas Court, Montgomery County.

No. 112068.   Decided July 22, 1957.

Herbert S. Beane, City Atty., by Morris Gilbert, for the City of Dayton.

Mathias H. Heck, Pros., by Edmund Shea, for the Board of Elections.

## OPINION

By McBRIDE, J.:

This action is one in mandamus to command the officers of the Board of Elections to hold a municipal primary for the selection of six candidates for the City Commission according to the Charter of the City of Dayton. An alternative writ of mandamus was allowed returnable at 2:00 P. M. on July 22nd, 1957 requiring the defendants to proceed or show cause why they have not done so.

Subsequently a demurrer was filed. The demurrer tests the sufficiency of the petition and submits the legal question as to whether a municipal primary is required under the circumstances set forth in the petition.

The petition alleges that the terms of three members of the City Commission will expire at the close of the calendar year 1957, and that petitions have been filed pursuant to Section 7 of the Charter on behalf of six persons as candidates for membership on said Commission. At the hearing it was stipulated, and ordered journalized, that the Board of Elections had approved the nominating petitions of all six candidates

on whose behalf petitions had been filed. The applicable provisions of the Charter are set forth in the petition.

Section 7 provides that candidates for commissioners shall be nominated by a primary election and that the name of any elector of the city shall be printed on the primary ballot when a petition is properly filed. Sub-sections (b) through (e) relate to the petition, its form and acceptance by the candidate.

Section 8 in effect provides that the only names that shall appear on the ballot shall be "the names of persons who are candidates for nomination;" and otherwise the form of the ballot shall be "substantially" as pictured in the sample ballot in Section 9. Section 8 further provides:

"Primary, Regular and Special Election Ballots provided under authority of this charter for the nomination or election of commissioners shall not bear the name of any person or persons or any issue other than those candidates for nomination or election to the office of commissioners."

Section 9 furnishes the form of the ballot for a primary election, listing five names since at least five were required to be nominated in 1913. No blank spaces are provided for write-in votes in the sample form of primary ballot prescribed by the Charter. Beneath the form appears the following paragraph relating to primaries:

"The candidates for nomination to the office of commissioner, who shall have received the greatest vote in such primary election shall be placed on the ballot at the next regular municipal election, in number not to exceed double the number of vacancies in the commission to be filled."

The following paragraph provides that ballots for the regular election shall be similar in form to those of primary ballots, except as to the caption and deletion of the words "nomination to the office of."

Section 10 provides for rotation of names on the ballot.

Section 11 provides that "At any regular municipal election held under the provision of this charter the candidates for the office of commissioner in number equal to the vacancies to be filled, who shall have received the greatest number of votes cast, shall be declared elected."

Section 12 provides for the time of regular and special elections and proceeds as follows:

"All elections shall be conducted and the results canvassed and announced by the election authorities prescribed by general election laws, and, except as otherwise provided herein, the general election laws shall control in all such elections."

Sec. 3513.14 R. C., provides for the form of a primary ballot. It expressly requires:

". . . there shall be provided on each primary election ballot as many blank spaces as, but not more than, the number of nominations to be made for such office, in which the voter may write the names of persons for whose nomination he desires to vote, . . ."

Two sample forms are set forth in this statute demonstrating the number of blank spaces to be provided. Special provision is made by

statute for dispensing with a primary for certain offices, however such provisions have not been found with respect to non-partisan municipal primaries in cities over two thousand in population. **19 O. Jur. 2d 194; §§3513.01, 3513.02, 3515.22 R. C.**

The only issue in this case is whether or not the Board of Elections shall be ordered to conduct a municipal primary under the Charter under the circumstances existing in this case.

It is unfortunate at this late date that it is necessary to repeat the law on the significance of the adoption of a city charter under the "home rule" amendment of the constitution. The Supreme Court has consistently upheld local "home rule" and has consistently sustained the unimpaired freedom of the people in any municipality to adopt and to follow the procedures set up in their charters. **State, ex rel. Sherrill v. Brown, 155 Oh St 607; State, ex rel. Gamble v. Duffy, 164 Oh St 231.** Under the Ohio constitution, the rule that each elector is entitled to vote for every officer whose place is to be filled, is no longer the law of this state as regards elections held under city charters. **Reutener v. Cleveland, 107 Oh St 117.** In other words, insofar as the local community is concerned, the charter it adopts is the supreme law of the community insofar as it relates to the subject matter authorized by the "home rule" amendment. To that extent the general law of Ohio is not applicable in such community. Since the charter contains the fundamental law, equivalent in rank to that of the constitution, it is entitled to a liberal construction to effect its purpose and it is not subject to strict interpretation nor may its provisions suffer by comparison or conflict with existing statutes that are applicable elsewhere in the State.

At the outset we are confronted with the argument that every voter is entitled to write in on the ballot any person of his choice and that accordingly the Board must hold an election for that purpose. **Sec. 3513.14 R. C.** It is argued that a failure to do so would be unconstitutional. The only direct authority on the local question is an opinion of the Prosecutor issued in 1955, in which he finds that Section 12 of the Charter incorporates general statutes and that **§3513.14 R. C.,** requiring blank spaces, is applicable to a municipal primary. This opinion was followed. The comment from the Attorney General's office was contained in a letter in which Joseph S. Gill, First Assistant, wrote that he believed the question was not one of conflict between the charter and state statutes but of a question of a basic right of suffrage. "I believe," he wrote, "that you followed the proper course . . . **and thereby avoided any serious question of constitutionality of the coming election."** In other words this opinion avoids rather than decides the constitutional issue as to whether the Charter may prohibit write-ins.

The General Assembly has adopted some regulations prohibiting write-ins and dispensing with primaries and the constitutionality of such provisions have not been questioned. **Article V, Section 2, Ohio Constitution** provides:

"All elections shall be by ballot."

The form of the ballot, so long as it is a ballot, is left to the sound discretion of the legislature. **State v. Bode, 55 Oh St 224.** The people

of any municipality may acquire the same right and discretion under "home rule."

The right to vote, which cannot be abridged, must be distinguished from the privilege of holding office which is not an inherent right. In the exercise of police power the General Assembly and municipalities, by Charter, may adopt provisions for the nomination of candidates for public office. Reasonable restrictions may be imposed upon the right to appear on the ballot. 19 O. Jur. 2d 66. A requirement for qualification by petition and prohibiting write-in voting is reasonable, lawful, and constitutional under the "home rule" amendment. Other more difficult and less reasonable provisions have heretofore been sustained by the Supreme Court. Consequently we reach the conclusion that a prohibition against write-in voting is constitutional; further, that if there be any doubt on this question such doubt is removed if such prohibition exists in a city charter.

Section 7 of the Charter provides that "the name of any elector shall be printed on the primary ballot when a petition is properly filed." Section 8 provides that the names of "candidates for nomination" who have filed petitions as required shall appear on the ballot. The Charter is stronger when it states:

"Primary . . . ballots . . . for nomination . . . of commissioners **shall not bear the name of any person or persons . . . other than those candidates for nomination** . . . to the office of commissioner."

Here is an express, unqualified prohibition against the use of any name other than "those candidates" who are otherwise entitled to have their names printed on the ballot. Just what was intended by the city fathers by the prohibition against all names except "those candidates for nomination?" The term is repeatedly used and originally defined as individuals on whose behalf petitions are circulated, filed, and approved. True, this sentence requires a separate, independent ballot however it excepts from its prohibition by a demonstrative word a specific group which the Charter frequently refers to and in the context of the instrument means those candidates on whose behalf petitions have been filed. In legal parlance the provision must be construed in pari materia. The requirements that a person on whose behalf a petition has been circulated shall indicate his acceptance as a candidate for nomination fits into the charter pattern. No write-in candidate could provide this advance assurance of willingness to serve for an insignificant compensation.

If, after this prohibition, any doubt remains it is resolved by the graphic form in which the sample primary ballot is incorporated in the Charter. This sample ballot, adopted as a part of the Charter, and expressly required to be **substantially** followed, contains spaces for "those candidates" who have filed petitions and provides no blank spaces for write-ins. The framers of the Charter, by illustration and written words, clearly expressed their intention as to the form of the primary ballot and thus preempted this subject thereby prohibiting any incorporation of general election laws by reference under Section 12 of the Charter. A comparison of the Charter sample form with the statutory

sample form in §3513.14 R. C., reveals a difference in form and in substance and dispels any remaining doubt, especially since the framers of the city charter were among the first to graphically provide in laws the sample form of ballots. Presentation of ballot requirements by sample in §3513.14 R. C., was not adopted by the assembly until years later.

The conclusion of the Court, by simple interpretation and not by construction, is that the Charter of the City of Dayton expressly prohibits any names, other than those regular candidates, from appearing on the ballot and it graphically requires a form which does not contain blank spaces for write-in votes for Commissioners.

There is a common misconception of the provisions of the Charter respecting the number to be nominated at the primary. It is generally accepted that there must be at least six persons nominated. The charter merely limits the maximum number to "not to exceed double the number of vacancies . . . ." The framers of the Charter not only prohibited write-ins but they also anticipated situations in which less than double the number would be nominated. Therefore, insofar as the rights of voters who approved this Charter are concerned, it is immaterial whether or not the maximum number is nominated at the primary.

In the instant case it is alleged and accepted as true for the purpose of the demurrer that six persons have filed petitions under Section 7 and, as stipulated, six persons have been qualified by the Board of Elections as candidates for nomination under the Charter. Since three vacancies will arise it is obvious that these six candidates are entitled to have their names on the ballot at the next regular or general municipal election and, since the primary ballots "shall not bear the name of any person or persons . . . other than those candidates for nomination," no other person may have his or her name placed on the ballot at the primary or at the general election.

Under these circumstances it appears that "those candidates for nomination" within the appropriate number have been determined as candidates for election to those offices and no practical purpose would be served and no right of any voter of Dayton would be affected by the failure of the Board of Elections to conduct a municipal primary at this time.

The Charter does not dispense with the necessity of a primary and, relying upon the reference incorporated in Section 12 of the Charter, we fail to find any state statute which dispenses with a non-partisan primary for municipal officers. Several other different situations are thus provided for. It appears that the General Assembly is not and by the very nature of "home rule" cannot be concerned with the varied and in some instances unique methods and problems existing under each city charter. Amendments, if necessary or desired, lie within the power of the people of the municipality and they are expected to take full advantage of the opportunity and simplicity of regulating the governing provisions of their own local charter. This opportunity has been exercised but sparingly in Dayton. Locally the Charter is considered more with respect for the past than as an opportunity in governing the present and future generations.

In the absence of authority in either the Charter or the general statutes dispensing with the current primary and in the absence of the existence of any practical purpose or personal rights, must the Court by a preemptory writ require the Board of Elections to perform a vain and useless act? This Court thinks not for two reasons, one of which has already been partially explained.

The word "shall" as used in the Charter with reference to a primary must be construed to effect the purpose involved of selecting and electing City Commissioners pursuant to the method adopted. Where that purpose and method is followed and the results accomplished the Charter purpose is completely satisfied. The word "shall" is construed by courts in connection with the subject matter, the rights involved, and the purpose to be accomplished. Where the public or individuals have a de jure claim that the power be exercised, or where something is directed to be done for the sake of justice, or for the public good "shall" is construed as being mandatory. As applied to the primary situation, the Charter purpose has been accomplished and no individual has a de jure personal right at this time to become a candidate or to select any other candidate. Therefore the expression "shall" is not mandatory.

Secondly, the writ sought is an extraordinary one which eliminates the usual procedure and requires a clear right to definite relief for some justiciable purpose. Nothing could be less clear or more uncertain than a right to relief where the issue is resolved or becomes moot. Nothing would tend more to encourage disrespect for the law and the exercise of the right to vote than to conduct a primary when the candidates are determined. "The policy of the legislature is, and has been, to dispense with unnecessary primaries wherever this condition presents itself. Courts have always refused to require the performance of a useless and unnecessary act."

Accordingly, and without considering any issue other than required for the purposes of the demurrer, the Court sustains the demurrer and denies the writ. Because of the emergency nature of the action and the necessity for an early decision the Court has not included herein the customary citations. The Court will cooperate to expedite an appeal in event any party so desires.