STATE, EX REL. JACKSON, RELATOR, *v.* HORSTMAN ET, RESPONDENTS.

Common Pleas Court, Montgomery County.

No. 119408.   Decided August 25, 1961.

*Messrs. Shaman, Winer, Shulman & Ziegler,* by *Mr. Paul Ziegler,* for relator.

*Mr. Paul R. Young,* prosecuting attorney, by *Mr. Charles A. Anderson* and *Mr. Russell E. Yeazel,* assistant prosecuting attorneys, for respondents.

*Mr. Russell L. Carter,* Amicus Curiae.

(BAYNES, J, of Madison County, sitting by assignment.)

BAYNES, J. This is an action in mandamus. The prayer of the petition is that a writ issue commanding respondents to

have relator's name placed on the official ballot, as a candidate for the office of Municipal Judge of the City of Dayton for the term commencing January 2, 1962, at the coming election to be held November 7, 1961.

The issue is made by the petition, the answer, the stipulation of facts and the exhibits. Argument of counsel was made to the Court on August 16 and 17.

The petition was filed on August 7 and the answer on August 16. Since time is a crucial factor the case, as indicated, it was advanced for determination and we are compelled to limit the extent of citations of authority and other features ordinarily included in opinions.

The uncontradicted facts are: Relator has occupied the office of Municipal Judge of the City of Dayton since April, 1945. His present term expires on January 1, 1962. On January 30, 1961, he filed his declaration of candidacy and nominating petition and paid the filing fee. This petition contained 341 signatures of which respondent, Board of Elections, found 293 to be valid. No action whatsoever was taken by respondents on this petition.

Subsequently on July 8, 1961, relator filed a statement of candidacy and nominating petition and paid his filing fee. This petition contained 1971 signatures of which respondent found 1884 to be valid. On July 18 relator was notified, by letter, that his nominating petition contained insufficient signatures. The Charter of the City of Dayton would require 2178 signatures of registered voters within the municipality.

One Arthur O. Fisher was granted an ex parte order permitting him to be made a party respondent. A motion to dismiss him as a party and to strike his answer from the file was sustained. His counsel was, however, permitted to present argument to the Court as Amicus Curiae.

The question of the case is, may relator file a party primary nominating petition under provision of paragraphs four (4) and eight (8) of Section 1901.07, Revised Code (eff. 7-21-59), and be eligible to be a candidate at the November election? Or must he file a nominating petition under the Charter of the City of Dayton, Sections 7, 8 and 9, under the provision of paragraph two (2) of Section 1901.07, Revised Code?

Historical background is helpful in resolving these questions under recognized rules of statutory construction. Municipal Courts were, prior to 1951, established by special acts of the Legislature. The first was established for Cleveland in 1910. The Dayton court was established in 1914. By 1951 the 39 established courts were governed by a hodgepodge of special acts with varying provisions.

All these acts were repealed and a *General or Uniform Municipal Court Act* was passed in 1951. Effective July 21, 1959, there had been established 92 Municipal Courts. For further history see 38 Ohio Jurisprudence (2d), 19, Sec. 5 e. s., the Ohio Court System—Ohio Legislative Service Commission (January 1961) and v. 124, 125, 126, 127 and 128 Ohio Laws.

The second paragraph of Section 1901.07, Revised Code (formerly Section 1587 General Code) (eff. 6-13-51 to 7-4-55), provided that municipal judges could be nominated either by petition or primary election in the manner provided for common pleas judges. *Excepting that if a municipal charter made provisions for nomination of municipal court judges they were to be nominated in conformity to provisions of the city charter.*

The Municipal Charter of the City of Dayton, adopted in 1913, had never, or does it now, contain any provision for the nomination of the city's municipal judges.

Effective July 5, 1955, Section 1901.07, Revised Code, was substantially revised. That Section as amended and effective to and on July 21, 1959, and now contains substantially the same provisions as the 1955 amendments, although it now contains three more paragraphs. It essentially now provides:

(1) Fixes the judge's terms of office.

(2) Provides for nomination by nominating petition or primary election. *Except a Charter City if the court's area of jurisdiction is the city's corporate limits judges are to be nominated as provided by the Charter. If there is no Charter provision nomination is to be in the same manner as the Charter provides for the nomination and election of the municipal legislative authority.*

(3) *If the municipal court area extends beyond the city's corporate limits and the Charter contains a primary date other than the 1st Tuesday after the 1st Monday in May then the judges shall be nominated only by petition.*

(4) *If there are no Charter provisions applicable* for party nomination for municipal judge the candidate shall file a declaration of candidacy and petition not later than 4:00 p. m. of the 90th day before the 1st Tuesday after the 1st Monday of May under Section 3513.07, Revised Code. Same signature numbers as for common pleas judges are required. If no candidate of one party files or if the number filed is only one of each party no primary is to be held and a certificate of nomination is to be issued under Section 3513.02, Revised Code.

(5) *If there are no Charter provisions applicable* nominating petitions for independent candidates are to be filed not later than 4:00 p. m. of the 90th day before the 1st Tuesday after the 1st Monday in May under Section 3513.261, Revised Code. Signatures required are at least 1% of number of electors voting for governor at next preceding regular state election in the area of court's jurisdiction or 2500, whichever is lesser and are limited to twice the minimum required number.

(6) Provisions for newly established municipal courts.

(7) Where by Section 1901.02, Revised Code, a court's territory is enlarged special provision is made for filing of nominating petitions.

(8) The nominating petition or declaration of candidacy must designate the term sought. At the following election candidacies of judges nominated shall be submitted to electors on non partisan judicial ballots, same as the common pleas court, *except that in a Charter municipality candidates shall be elected in conformity to the Charter if provisions are made therefor.*

(9) Then follow special provisions notwithstanding the foregoing uniform provisions.

(10) In Cincinnati and Cleveland candidates are nominated only by petition containing at least 250 signatures for the former and 3000 for the latter, to be elected as the common pleas court and to be filed within same time as council petitions in the former and candidates for municipal officers in the latter.

(11) In Toledo candidates are nominated only by petition containing at least 1000 signatures to be elected as the common pleas court and to be filed within the same time as council petitions.

(12) In Akron candidates are nominated only by petition

containing at least 250 signatures to be elected as the common pleas court and to be filed within the same time as candidates for municipal officers.

Counsel have not cited any case specifically applying the provision of paragraph two of Section 1901.07, Revised Code, which, if effective, would require municipal court candidates to be nominated and elected as are the candidates for Commissioner of the City of Dayton. That is the legislative authority. Nor have we, in our research, found any such case.

The question raised in this case, as frequently occurs where election laws and municipalities are involved, calls into question application of the provisions of the Ohio Constitution; Article IV, the judiciary, Article V, the elective franchise, Article XVII, elections, Article XVIII, municipal corporations and Article II, legislative, with particular reference to Section 26. This section requires that all laws of a general nature must have uniform operation throughout the state.

To anyone unfamiliar with the Charter provisions for the election of Commissioners, the legislative authority, of the City of Dayton, we refer them to sections 7, 8 and 9 of the Charter. These provisions are fully discussed and analyzed in a sound and well considered opinion by Judge McBride of the Montgomery County Common Pleas Court in the case of *Dayton* v. *Horstman* (1957), 77 Ohio Law Abs., 570, 143 N. E. (2d), 879. In the interest of brevity those provisions are not here repeated.

Obviously the provisions of paragraph 2 of Section 1901.07, Revised Code, relating to municipal judges being elected in the same manner as the legislative authority, where there is no charter provision for election of judges, is not reconcilable with the provisions of paragraphs 4, 5 and 8. The condition of applicability in these latter is that there are no charter provisions applicable for candidates for municipal judge.

It will be observed that Section 1901.07, Revised Code, classifies municipalities into charter and non charter cities. This is permissible classification and Article XVIII of the Ohio Constitution creates that distinction. *Sanzere* v. *Cincinnati* (1952), 157 Ohio St., 515, 106 N. E. (2d), 632, 47 Ohio Opinions, 478. Moreover, in view of the judicial article and in view of the fact that many municipal courts have territorial jurisdiction outside the corporate limits it follows that a further classi-

fication of Charter municipalities as to those having extraterritorial jurisdiction violates no constitutional provision.

It might also be well to mention at this point, since respondent's counsel argue against relator's rights to seek relief in this action, that among the grounds of judicial review of decisions of Board of Elections is its misinterpretation of a statute or a clear disregard of legal provisions applicable thereto. *Burgstaller* v. *Boyd* (1948), 149 Ohio St., 193, 78 N. E. (2d), 352, 36 Ohio Opinions, 541.

Again referring to the irreconcilability of Section 1901.07, Revised Code, it is a fundamental rule of judicial construction of statutes that a court should avoid an interpretation which would cause much litigation, confusion and uncertainty, prevent administration from proceeding in an orderly manner and result in harmful consequences. Nor are statutes to have applied to them an equitable interpretation in order to avoid a seemingly undesirable result. 37 Ohio Jurisprudence, 628, Sec. 346 e. s., 50 Am. Jur., 372, Sec. 368 e. s.

In a long line of cases commencing with *Fitzgerald* v. *City* (1913), 88 Ohio St., 338, 103 N. E., 512, the Supreme Court and the other courts of Ohio have in their decisions implemented the object and spirit of the "Home Rule" provisions of Article XVIII of the Constitution of Ohio. In the same manner the legislature, at least as regards to municipalities, has enacted laws to the same purpose. There can be no doubt, and we have none, that the purpose of the legislature in providing that municipal judges in Charter cities should be elected in the same manner as the legislative authority if no provision is made for judicial nominations in the Charter does, and was intended to, implement the "Home Rule" provision.

It is a further rule of statutory construction that where different provisions of an act are irreconcilable that the provision which is most in harmony with the fundamental purpose of the statute must prevail. *Industrial Commission* v. *Hilshorst* (1927), 117 Ohio St., 337, 158 N. E., 748. It is also presumed that the legislature had a definite purpose for each enactment and all the provisions contained therein. 37 Ohio Jurisprudence, 656, Sec. 361 e. s., 50 American Jurisprudence, 283, Sec. 303 e. s.

We are therefore compelled and required to hold that the candidate for office of municipal judge in the Charter City of

Dayton is required by paragraph two of Section 1901.07, Revised Code, to file for nomination in 1961 in the same manner as that which the Charter provides for nomination and election of the city Commissioners according to Sections 7, 8 and 9 of that Charter.

While this holding may be, and undoubtedly is, an undesirable result insofar as relator and many others are concerned, it will bear repeating that the right to hold office is not a natural right or a necessary incident of citizenship. It depends upon compliance with the law and is subject to legislative control and regulation. The burden of complying with the statutes rests upon the candidate. *Braverman* v. *Vitullo* (1948), 150 Ohio St., 28, 82 N. E. (2d), 776, 37 Ohio Opinions, 506.

We have previously referred to the application and effect of Section 26 of Article II, which requires laws of a general nature to have uniform operation. We are not called upon to decide whether or not the provisions of paragraphs 9 to 12 inclusive of Section 1901.07, Revised Code, violate this section. Or if it does whether relator could raise or have any such violation result in legal relief to him.

Assuming for the purpose of argument that the section is unconstitutional there would be no valid section of law for the election of municipal judges for terms commencing in January of 1962. So that mandamus being a writ issued to command the performance of an act which the law specially requires of an officer could not benefit relator because there would be no act that the Board of Elections would have the duty to perform which relator here in this action seeks.

Whether in such case a petition for writ of prohibition would lie constitutes a question not before us. cf. *Stanley* v. *Bernon* (1933), 127 Ohio St., 204, 187 N. E., 733.

An entry is concurrently filed by the Court in accordance with the foregoing opinion.