THE STATE, EX REL. FROELICH, *v.*
MONTGOMERY COUNTY BOARD OF ELECTIONS.

[Cite as State, ex rel. Froelich, v. Bd. of Elections (1979), 65 Ohio App. 2d 23.]

(No. 6378—Decided June 28, 1979.)

*Mr. Brian D. Weaver, Mr. Paul R. Leonard* and *Mr. Laurence J. Rab,* for relator.

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Chris R. Van Schaik,* for respondent.

*Per Curiam.* This original action in mandamus seeks an order approving relator's petition for nomination on the ballot for the November election as clerk of the Dayton Municipal Court. Since the case was submitted upon an agreed statement of facts and there is urgency for a prompt opinion, the facts will not be repeated here; and in the interest of economy the court proceeds directly to the questions of law.

In view of the unanimity of the judgment by the members of the court, this decision is released as a *per curiam* opinion to emphasize unanimity on the charter issue and not necessarily as a suggestion that elaboration upon the law as it applies to the Dayton Charter was or was not necessary.

By virtue of R. C. 1901.07 and 1901.31, relating to Municipal Courts, the office of clerk of the Municipal Court is filled "in the same manner as the charter prescribes for the *nomination* and election of the legislative authority of the municipal corporation." R. C. 1901.07. There is no dispute on this point.

The nomination and election in this case is governed, under the home rule provision (Sections 3 and 7 of Article XVIII of the Ohio Constitution), by the Dayton Charter. The authorities have consistently sustained charter provisions for the nomination and election of municipal officers. Where the Municipal Court statute directs the use of the method of local selection, the charter provisions prevail over state statutes. 19 Ohio Jurisprudence 2d Rev. 31, 32, 135, 151, Elections, Sections 11, 12, 114 and 126; 32 Ohio Jurisprudence 2d 18, Judges, Section 8.

Without repeating the statewide authorities affirming the supremacy of a city charter, similar election issues have been resolved in the past on the local charter in *Dayton* v. *Horstman* (1957), 77 Ohio Law Abs. 570; *State, ex rel. Jackson,* v. *Horstman* (1961), 88 Ohio Law Abs. 140; *Hammond* v. *Young* (1953), 67 Ohio Law Abs. 170; and *State, ex rel. Devine,* v. *Hoermle* (1959), 168 Ohio St. 461.

In *State, ex rel. Jackson,* v. *Horstman, supra,* the court specifically held, in a mandamus action, that the candidate for office of municipal judge (also clerk) is required by the Uniform

Municipal Court Act of 1951 to file for nomination in the same manner as that which the Dayton Charter provides for nomination of city commissioners according to Sections 7, 8 and 9 of that charter, and not according to the provisions of the Revised Code. There was no doubt in 1961, and there is none now, but that the legislature incorporated into state law local charter provisions for the nomination of Municipal Court officers to the exclusion of the state election laws.

Under the constitutional grant of "all powers of local self-government" in Section 7, Article XVIII of the Ohio Constitution, charter cities have the power to regulate municipal elections, including the right to franchise. Provisions of the state statute for the closing of registration are applicable to state primary and general elections, not necessarily to municipal elections. 1950 Ohio Atty. Gen. Opinions 258. This charter power includes the right to confer upon women the right to vote when such right did not otherwise expressly exist under the Ohio Constitution. *State, ex rel. Taylor,* v. *French* (1917), 96 Ohio St. 172.

With respect to the issues in this case, Sections 7(A) and 7(B) of the charter of the city of Dayton provide for the nomination of members of the local legislative authority, the city commissioners, by petition as follows:

"***when a petition in the form hereinafter prescribed shall have been filed in his behalf with the Board of Elections, and such petition shall have been signed by at least 800 signatures of registered electors of the municipality. [Section 7(A).]

"***Each signer of a petition shall sign his name in ink or indelible pencil, and shall place on the petition after his name his place of residence by street and number. [Section 7(B).]"

The parties do not quarrel over the number of signatures, it being accepted that 800 signers are required; however, they differ as to other similar provisions in the charter only because of different and some ambiguous provisions of the much amended election statutes.

Since the charter contains provisions and forms for the content of nominating petitions and since the Revised Code incorporates charter provisions for the nomination of clerk of the Municipal Court, the court must look *exclusively* to the charter for the law in this case. Neither the court nor the par-

ties may pick and choose state statutes at variance with the charter when the charter is responsive to the question.

As to the persons who may sign a nominating petition, Section 7(A) of the charter requires: (1) 800 signatures (2) of registered electors (3) of the municipality. These provisions are constitutionally exclusive. Registration is required, but this is not to be confused with the definition of a "qualified elector" who resides in his precinct of registry under the state statutes.

When and where registered, or when an otherwise qualified elector may cast his vote at a primary or general election, are proper subjects of state regulation; however, for a nominating petition this charter requires that signers reside in the "municipality," but does not require any specific precinct of residence or of registry. The language clearly states that the registered electors must reside in the municipality and contains no other condition. In this instance the imposition by construction of additional requirements, not imposed by the charter, destroys the right of citizens granted under the charter to sign nominating petitions. The philosophy of the Dayton Charter is to ignore, for local purposes, political or artificial districts within the city.

As used in Section 7(A) of the Dayton Charter, an "elector" is a generic word, descriptive of a citizen having constitutional *and charter qualifications* under the home rule provision of the Ohio Constitution, that enables him to participate in the elective process of signing a nominating petition. "Registered" means that such citizen has recorded his right to participate with the board of elections. "Registered elector," as used in Section 7(A) of the charter, means one who has complied with both of these conditions required for him to sign a nominating petition; registered elector does not mean or incorporate the definition of a "qualified elector" entitled to vote, as more narrowly set forth in the state statutes for state elections.

Those who meet the conditions specified in the city charter are qualified to sign a nominating petition. Their disqualification by the board of elections on the basis of inapplicable state statutes was contrary to law.

The same reasoning applies to the form and content of the municipal nominating petition. The charter requires each

signer to list his "residence by street and number" after his signature. It does not require date of signing, ward or precinct, after the name of the signer.

The provisions of the state statutes for the form and content of nominating petitions as well as the conditions required for qualification of signers of such petitions have no application where the manner and procedure for nomination is expressly provided by an applicable city charter. In view of this conclusion we do not reach the problem found in the case of *State, ex rel. Schroy,* v. *Wagner* (1933), 127 Ohio St. 174, which does, however, at page 178, define a registered elector who has transferred his residence within the same voting area.

We conclude that the Montgomery County Board of Elections was in error when it invalidated eight signatures on the grounds that there was no date of signing after the signer's name, street and number. Section 7(B) of the charter does not require, on a nominating petition, the date of signing, ward or precinct, with each signature.

We further conclude that the board of elections was in error when it invalidated 36 signatures because they listed their residence by street and number at a different address *within the city of Dayton,* other than the Dayton residence listed for such signers at the office of the board of elections. Section 7(A) of the charter requires signers to be registered electors residing "[in] the municipality" and does not require such signers to be a resident of the precinct in which they are registered.

In view of this opinion and the stipulations of facts agreed upon by the parties, notably that 784 other signatures were valid, relator has the necessary 800 valid signatures; his petition for nomination is approved and his name is ordered to be placed upon the ballot.

A writ of mandamus to that effect is hereby issued forthwith commanding the Montgomery County Board of Elections to place the name of the relator on the ballot.*

*Writ allowed.*

MCBRIDE, P. J., PHILLIPS and SHERER, JJ., concur.

SHERER, J., of the Second Appellate District, retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

---

* On July 19, 1979, relator withdrew as a candidate for election.