THE STATE EX REL. YIAMOUYIANNIS *v.* TAFT, SECY. OF STATE, ET AL.

[Cite as *State ex rel. Yiamouyiannis
v. Taft* (1992), 65 Ohio St.3d 205.]

(No. 92–1938—Submitted October 19, 1992—Decided October
21, 1992—Opinion announced December 9, 1992.)

*John Yiamouyiannis, pro se.*

*Lee I. Fisher,* Attorney General, and *Cherry Lynne Poteet,* Assistant Attorney General, for respondent Secretary of State.

*Michael Miller,* Prosecuting Attorney, *Harland H. Hale* and *Mark E. Linder,* Assistant Prosecuting Attorneys, for respondents Boards of Elections of Adams, Allen, Auglaize, Clark, Crawford, Cuyahoga, Delaware, Franklin, Hancock, Morrow, Scioto, Licking, Union, Stark and Knox Counties.

*David L. Landefeld,* Prosecuting Attorney, and *Roy E. Hart,* Assistant Prosecuting Attorney, for respondent Board of Elections of Fairfield County.

*Robert P. DeSanto,* Prosecuting Attorney, *Deborah E. Woodward,* Assistant Prosecuting Attorney, for respondent Board of Elections of Ashland County.

*Joseph T. Deters,* Prosecuting Attorney, and *Scott C. Kirschman,* Assistant Prosecuting Attorney, for respondent Board of Elections of Hamilton County.

*Gerald L. Heaton,* Prosecuting Attorney, for respondent Board of Elections of Logan County.

*Donald W. White,* Prosecuting Attorney, and *Elizabeth Mason,* Assistant Prosecuting Attorney, for respondent Board of Elections of Clermont County.

*R. Larry Schneider,* Prosecuting Attorney, for respondent Board of Elections of Union County.

*John W. Baker*, Prosecuting Attorney, and *Robert J. McClaren*, Assistant Prosecuting Attorney, for respondent Board of Elections of Knox County.

*Robert A. Fry*, Prosecuting Attorney, for respondent Board of Elections of Hancock County.

*David E. Bowers*, Prosecuting Attorney, for respondent Board of Elections of Allen County.

*Stephen A. Schumaker*, Prosecuting Attorney, and *Thomas E. Trempe*, Assistant Prosecuting Attorney, for respondent Board of Elections of Clark County.

---

*Per Curiam.* Relator, John Yiamouyiannis, seeks a writ of mandamus to order respondent Secretary of State Bob Taft to place relator's name on the November 3, 1992 general election ballot as a candidate for President of the United States.

On August 14, 1992, relator filed with the Secretary of State a petition that consisted of seven hundred seventy-one part-petitions from eighty-two counties and contained 7,978 signatures. The parties agree that five thousand valid signatures are required for relator's presidential candidacy to appear on the ballot. On September 21, 1992, relator learned that his petition had been rejected because it contained only 4,435 valid signatures, five hundred sixty-five signatures fewer than necessary.

Relator argues that the Secretary of State and the respondent boards of elections from twenty counties, including Franklin, Clark, Crawford, Delaware, Cuyahoga, Adams, Allen, Ashland and Auglaize Counties, improperly rejected at least five hundred sixty-five valid signatures. Relator asks for no relief from the boards of elections except that they be ordered to do "whatever this court deems necessary to rectify this situation."

Respondents have answered and/or filed motions pursuant to Civ.R. 12(B)(6) (dismissal for failure to state a claim upon which relief can be granted), or Civ.R. 12(C) (judgment on the pleadings). The filing of procedural motions in lieu of an answer, however, is not contemplated by the abbreviated pleading schedule in S.Ct.Prac.R. VIII(11), which the rule itself states is designed to allow "adequate time for full consideration" of election cases. See *State ex rel. Beck v. Casey* (1990), 51 Ohio St.3d 79, 83, 554 N.E.2d 1284, 1287–1288, and *State ex rel. Green v. Casey* (1990), 51 Ohio St.3d 83, 84, 554 N.E.2d 1288, 1290 (allegations in mandamus complaint taken as true where boards of elections moved to dismiss complaint and did not contest underlying facts). Moreover, these motions call for a decision on the merits of this controversy and, therefore, are ill conceived. *Assn. for the Defense of the*

*Washington Local School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 117, 537 N.E.2d 1292, 1293. Accordingly, the Civ.R. 12(B)(6) and (C) motions are overruled.

Relator moved for default judgment against the Secretary of State, claiming that he did not answer timely under S.Ct.Prac.R. VIII(11). This rule requires the filing of an answer in election cases five days after service of summons. The Secretary of State was served on Sunday, September 27, 1992 and answered on Monday, October 5, 1992. The Secretary of State argues that his answer was timely under Civ.R. 6(A).

Nothing in Civ.R. 6(A), however, applies to extend the five-day answer period an extra three days. The rule states:

"In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. When a public office in which an act required by law, rule, or order of court, is to be performed is closed to the public for the entire day which constitutes the last day for doing such an act, or before its usual closing time on such day, then such act may be performed on the next succeeding day which is not a Saturday, a Sunday, or a legal holiday."

Under this rule, Sunday, September 27 must be excluded from the five-day answer period because it was the day of service. Moreover, the succeeding Saturday and Sunday were not intermediate weekend days because Friday, October 2, 1992, was the fifth day after service, and this court was open to the public on that day. Thus, the last day for the Secretary of State to answer was Friday, October 2, his October 5 answer was out of rule, and he may answer now only upon motion and a showing of excusable neglect pursuant to Civ.R. 6(B)(2).

The Secretary of State has not attempted to comply with Civ.R. 6(B)(2). However, a default judgment may not be granted against the state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." Civ.R. 55(D). Thus, to succeed on his motion for default, relator must, at a minimum, establish that he is entitled to respondent's performance of a clear duty to place his name on the general election ballot. See *State ex rel. Van de Kerkhoff v. Dowling* (1991), 61 Ohio St.3d 55, 572 N.E.2d 653.

Relator argues, in effect, that respondents abused their discretion by finding that his petitions did not have the required five thousand valid signatures. He first contends that boards of elections across the state improperly rejected approximately 1,810 of his petition signatures. Claiming to be an expert in probability and statistics, he relies on his study of a sample comprised of the "first 10 Franklin County petitions from the first of two files provided to him by the Secretary of State * * *."

Relator asserts that he checked the signatures on these ten part-petitions against the voter registration cards on file at the Franklin County Board of Elections. He found that "out of 45 signatures claimed to be not valid, 23 were in fact valid," such that "23/45ths or 51% of the names excluded by the Franklin County Board of Elections as being invalid were actually valid * * *." Relator then "projected" this rate to the "3543 signatures excluded statewide" and concluded that:

"[A]pproximately 3543 X 51% or 1810 registered voters signing their respective county petitions were excluded from the Relator's petition. Added to the 4435 signatures the Secretary of State has affirmed as valid, the additional 1810 registered voters would indicate that the Relator had approximately 6245 registered voters sign to have him put on the November 3, 1992 general election ballot as a Presidential candidate."

Relator submits (1) that he could match to registration records sixteen of thirty-seven signatures the board rejected because the signer was not registered at the address on the part-petition, (2) that he could match to registration records one signature the board invalidated for an indistinct date, (3) that he could match to registration records four of five signatures that were printed, and (4) that he could match to registration records two signatures that the board considered illegible. His findings, however, ignore the provisions of R.C. 3501.38, which govern the form of nominating petitions filed in this state.

Specifically, R.C. 3501.38(C) states that "[e]ach signer shall place on the petition after his name * * * the location of his voting residence," which must be "the address appearing in the registration records at the board of elections." Of the sixteen signatures relator claims were erroneously rejected for lack of registration, only three were followed by the signer's correct voting residence and may have been invalidated by mistake. R.C. 3501.38(C) also requires signers to place the date after their signature. However, the date provided by one of relator's signers is not clear and may be either July 25 or July 28, 1992. Moreover, R.C. 3501.38(B) requires that signatures be written in cursive, and the four printed signatures that relator asserts to be otherwise valid were properly rejected for this reason. *Green, supra,* 51 Ohio St.3d at

85, 554 N.E.2d at 1290. Finally, boards of election are required to compare petition signatures with voter registration cards to determine if the signatures are genuine. Here, one of the pertinent two signatures is too faint to read, and the other is too scribbled.

Based on the foregoing, we find relator's evidence unreliable because it does not account for the variety of reasons for which petition signatures may be properly disqualified under R.C. 3501.39(C). Moreover, relator cites no authority to suggest that a writ of mandamus may be granted based on the probability of a duty to act. Accordingly, we are not persuaded by this record to conclude that all boards of elections in Ohio commit errors at the same rate when reviewing petition signatures or that relator is entitled to relief for this reason.

We reject relator's remaining arguments for similar reasons. He asserts (1) that the Cuyahoga County Board of Elections erroneously invalidated fifty-three percent of the petition signatures submitted by two other candidates and, therefore, also erroneously invalidated fifty-three percent of the signatures he submitted in that county, (2) that the average rate of error for the boards of elections in Adams, Allen, Ashland, and Auglaize Counties permits the conclusion that some number of additional signatures should be counted toward his goal of five thousand, (3) that the Secretary of State recorded only nine of the twelve valid petition signatures received from Clark County, and only eight of the sixteen valid petition signatures received from Crawford County, and (4) that the Secretary of State improperly invalidated two hundred twelve signatures on part-petitions from Delaware, Cuyahoga and Franklin Counties because four circulators were not registered electors. Each of these claims requires us to rely, in some measure, on relator's representations or evaluations of signature validity, which we consider unreliable given his lack of familiarity with R.C. 3501.38.

Accordingly, the motion for default judgment is overruled because relator has not substantiated his claim for relief against the Secretary of State. Moreover, as we have rejected relator's justification for issuing relief, our disposition eliminates the need for further review. The writ of mandamus, therefore, is also denied.

*Motions overruled
and writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.