[Cite as *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716.]

THE STATE EX REL. GREENE, APPELLANT, *v.* MONTGOMERY COUNTY

BOARD OF ELECTIONS ET AL., APPELLEES.

[Cite as *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*,

121 Ohio St.3d 631, 2009-Ohio-1716.]

*Mandamus — Elections — Primary elections — Petition for placement of name*
*on ballot for mayor — Petition rejected for lack of sufficient number of*
*valid signatures — Board of elections did not abuse its discretion in*
*applying statutory criteria for invalidating signatures when city charter*
*contains no criteria — Writ denied.*

(No. 2009-0586 — Submitted April 8, 2009 — Decided April 13, 2009.)

APPEAL from the Court of Appeals for Montgomery County, No. 23338.

_____

**Per Curiam.**

{¶ 1}   This is an appeal as of right from a judgment denying a writ of mandamus to compel the placement of the name of appellant, James R. Greene III, on the May 5, 2009 primary-election ballot for the office of mayor of the city of Dayton, Ohio.  Because the court of appeals properly determined that Greene did not establish his entitlement to the writ, we affirm.

{¶ 2}   On March 20, 2009, Greene filed a pro se complaint in the Court of Appeals for Montgomery County for a writ of mandamus to compel appellees, the Montgomery County Board of Elections, its members, its director, and its deputy director, to place his name on the May 5 primary-election ballot for mayor of Dayton.  Greene is an attorney.

{¶ 3}   In his verified complaint, Greene alleged the following.  On March 6, Greene filed a petition with appellee Montgomery County Board of Elections to be a candidate for mayor.  The petition was required to contain "at least 500

signatures of registered electors of the municipality." Section 7(A), Dayton Charter. On March 10, the board of elections determined that the petition contained only 398 valid signatures, and it thus refused to place Greene's name on the May 5 primary-election ballot.

{¶ 4} The board of elections struck 213 signatures from the petition. Greene alleged that the board of elections claimed to have invalidated these 213 signatures for the following reasons: 84 signatures because the persons were not qualified electors, 72 signatures because they did not meet certain board standards, and 57 signatures because the persons lived "out of the area." Greene alleged that 104 of these signatures were improperly invalidated on grounds not specified by the Dayton Charter.

{¶ 5} In a subsequent trial brief, Greene claimed that 110 of the signatures were improperly invalidated by the board of elections. In appellees' trial brief, they claimed that of the 213 signatures the board struck from Greene's petition, 84 were invalidated because the board could not match the names to the names contained in the voter-registration records on file with the board, 72 were rejected because the signatures or other legal marks did not resemble the signatures or legal marks on the voter-registration records, and the remaining 57 signatures were invalidated because the addresses on the petitions did not match the addresses on the voter-registration cards and it was therefore impossible to verify that the signers were registered electors of Dayton. Appellees' brief was supported by an affidavit.

{¶ 6} On March 27, the court of appeals held an expedited evidentiary hearing on Greene's mandamus claim. The court of appeals denied the writ on the same day:

{¶ 7} "Upon due consideration of the facts adduced at the March 27, 2009 hearing, including testimony from Gregory Gantt, Chairman of the Montgomery County Board of Elections; Steven P. Harsman, Director of the

Montgomery County Board of Elections; and Henderson Scott, Montgomery County Board of Elections employee, in addition to the arguments set forth in the parties' respective briefs, this Court does not find that Greene has demonstrated a sufficient basis to justify extraordinary relief. Specifically, Greene has failed to meet his burden of establishing that he has a clear legal right to his name being placed on the May 5, 2009 primary election ballot, and that Respondents have a clear legal duty to place his name on said ballot."

{¶ 8} On March 30, Greene filed a notice of appeal from the court of appeals' judgment as well as a motion for emergency relief and request for oral argument. On March 31, we ordered the immediate transmission of the court of appeals record and instructed the parties to file their merit briefs by April 8. We denied Greene's motion for emergency relief and request for oral argument.

{¶ 9} This cause is now before the court for our consideration of the merits of this appeal.

**Mandamus**

{¶ 10} To be entitled to the requested writ of mandamus, Greene must establish a clear legal right to certification of his candidacy and placement of his name on the May 5 election ballot,[1] a corresponding clear legal duty on the part of the board of elections and its members, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252, ¶ 10. Given the proximity of the election, Greene has established that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

---

1. According to appellees, there is currently no scheduled May 5, 2009 mayoral primary election in Dayton because there are only two candidates. See Section 9, Dayton Charter ("The candidates for nomination to the office of Mayor or Commissioner, who shall have received the greatest vote in such primary election shall be placed on the ballot at the next regular municipal election, *in number not to exceed double the number of vacancies to be filled*" [emphasis added]).

**{¶ 11}** For the remaining requirements, to establish the requisite legal right and legal duty, Greene "must prove that the board of elections engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or other pertinent law." *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 8. There is no evidence or claim of fraud or corruption here, so the dispositive issue is whether the board of elections abused its discretion or clearly disregarded applicable law by determining that Greene's nominating petition did not contain the required number of valid signatures to require his placement on the May 5 primary-election ballot.

### Dayton Charter

**{¶ 12}** Greene contends that he has established the requisite legal right and legal duty because the board of elections and its members and officials abused their discretion and clearly disregarded applicable provisions of the Dayton Charter by rejecting the signatures on his nominating petition and failing to place his name on the May 5 primary-election ballot as a candidate for mayor of Dayton. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

**{¶ 13}** Greene relies on Section 7(A) of the Dayton Charter, which provides:

**{¶ 14}** "Candidates for * * * Mayor under the provisions of this Charter shall be nominated by a primary election which shall be held in odd-numbered years on the day designated by general law for the holding of primary elections. * * * The name of any registered elector of the City shall be printed upon the primary ballot * * * and be placed on the voting machine when a petition in the form hereinafter prescribed shall have been filed in his behalf with the Board of Elections, and *such petition shall have been signed by at least 500 signatures of registered electors of the municipality*." (Emphasis added.)

**{¶ 15}** Greene claims that the board of elections improperly invalidated about 110 signatures from his petition by using grounds other than those set forth in the Dayton Charter.

**{¶ 16}** Greene's claim lacks merit for the following reasons.

**{¶ 17}** First, the board of elections properly applied nonconflicting statutes to determine whether the charter requirement of 500 signatures of registered Dayton electors had been met. Section 12 of the Dayton Charter incorporates these statutory provisions by providing that "[a]ll elections shall be conducted * * * by the election authorities prescribed by general election laws, and, except as otherwise provided herein, the general election laws shall control in all such elections."

**{¶ 18}** The charter does not specify how the board of elections is to determine when a nominating petition for a mayoral candidate contains the requisite "500 signatures of registered electors of the municipality." Under these circumstances, the board of elections did not abuse its discretion by applying statutory election provisions in its determination. See, e.g., *State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 25 ("Nonconflicting provisions of R.C. 3501.38 apply to charter amendment petitions"); *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 506, 756 N.E.2d 1228 ("Portions of pertinent statutes that do not conflict with the Ohio Constitution and the city charter apply"); *State ex rel. Fite v. Aeh* (1997), 80 Ohio St.3d 1, 4, 684 N.E.2d 285 (where charter provisions are silent on a matter, there is no conflict and statutory provisions apply); *State ex rel. Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 167, 169-170, 580 N.E.2d 1063 (where charter incorporates nonconflicting state law and the charter is silent about a matter, the statute applies).

**{¶ 19}** Second, Greene's reliance on the court of appeals' decision in *State ex rel. Froelich v. Montgomery Cty. Bd. of Elections* (1979), 65 Ohio

App.2d 23, 25-26, 19 O.O.3d 15, 413 N.E.2d 854, is misplaced. In that case, the court emphasized that "[n]either the court nor the parties may pick and choose state statutes at variance with the charter *when the charter is responsive to the question*." (Emphasis added.) Id. The Dayton Charter is not responsive to the issues here. In fact, consistent with the court of appeals' holding in *Froelich*,[2] the director of the board of elections testified at the court of appeals' hearing that the board did not invalidate any signature on Greene's petition for lack of a date or a ward or precinct number.

{¶ 20} Third, the board of elections properly rejected the signatures at issue here. Under R.C. 3501.11(K), the board of elections had a duty to "[r]eview, examine, and certify the sufficiency and validity of" Greene's petition. See also *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 230, 685 N.E.2d 754. "[B]oards of election are required to compare petition signatures with voter registration cards to determine if the signatures are genuine." *State ex rel. Yiamouyiannis v. Taft* (1992), 65 Ohio St.3d 205, 209, 602 N.E.2d 644. And under R.C. 3501.011(A) and (C), for the purpose of signing Greene's nominating petition, "the legal mark of a registered elector shall be considered to be the mark of that elector as it appears on the elector's voter registration record." Further, as Greene conceded in part at the court of appeals' hearing, the board properly invalidated the signatures of persons who did not live in Dayton.

{¶ 21} Nothing in the Dayton Charter, including the circulator-affidavit requirement of Section 7(B) cited by Greene, prevented the board of elections from invalidating the defective signatures. See, e.g., *State ex rel. Kennedy v. Cuyahoga Cty. Bd. of Elections* (1976), 46 Ohio St.2d 37, 39, 75 O.O.2d 100, 346 N.E.2d 283 (city charter provision requiring clerk of council to determine sufficiency of referendum petition before council action did not conflict with R.C.

---

2. To resolve this appeal, we need not determine whether *Froelich* was correctly decided.

3501.11(K) provision imposing duty on boards of election to review, examine, and certify the sufficiency and validity of petitions and nominating papers, because charter made no reference to board and did not purport to negate duties imposed on board by statute).

{¶ 22} Finally, the record transmitted to this court does not include a complete transcript of the March 27 evidentiary hearing before the court of appeals. Although appellees attached a partial transcript of the hearing to their brief, Greene did not submit a complete copy of the transcript with his brief. Without the transcript, we have " 'no choice but to presume the validity of the lower court's proceedings, and affirm.' " *Crane v. Perry Cty. Bd. of Elections*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 37, quoting *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. Greene had the duty to provide the pertinent portions of the transcript for this appeal. *Crane*, at ¶ 37; *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 28. Moreover, insofar as the portion of the transcript that has been submitted includes conflicting evidence on the substantive issues, the court will not substitute its judgment for that of the board of elections. See, e.g., *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 16, and cases cited therein.

{¶ 23} Therefore, the board of elections neither abused its discretion nor clearly disregarded applicable law by invalidating the signatures on Greene's nominating petition and determining that he had insufficient valid signatures to be certified as a candidate for mayor.

### Conclusion

{¶ 24} For the foregoing reasons, Greene failed to establish a clear legal right to placement of his name on the May 5, 2009 primary-election ballot as a candidate for mayor of Dayton or a corresponding clear legal duty on the part of

the board of elections and the rest of the appellees to place his name on the ballot. Therefore, we affirm the judgment of the court of appeals denying the writ of mandamus.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

James R. Greene III, pro se.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Victor T. Whisman, Assistant Prosecuting Attorney, for appellees.

_____