Per Curiam.
{¶ 1} Relator, Douglas Crowl, seeks a writ of mandamus compelling respondent, the Delaware County Board of Elections, to place his name on the November 3, 2015 general-election ballot as a candidate for Porter Township trustee. We grant the writ.

Background

{¶ 2} Crowl gathered signatures on a nominating petition to run for the position of Porter Township trustee in the November 2015 general election. He timely filed the petition, which contained 28 signatures, with the board of elections.
{¶ 3} The board’s staff marked eight signatures as not genuine. The board then determined that Crowl’s petition did not have enough valid signatures to qualify for the ballot.
{¶ 4} Crowl objected. On September 2, 2015, the board held a hearing, at which Crowl presented affidavits from each of the eight signatories, attesting that the signatures marked “not genuine” were in fact genuine.
{¶ 5} The board voted three to one to deny the protest.

Legal analysis

{¶ 6} R.C. 3501.011(C) provides that an elector’s “legal mark,” for purposes of signing election documents, “shall be considered to be the mark of that elector as it appears on the elector’s voter registration record.” In the exercise of its duties under R.C. 3501.11(K), the board determined that the eight petition signatures were invalid because they did not match the signatures on those voters’ registration forms.
{¶ 7} The board argues that R.C. 3501.011(C) makes a nonmatching signature per se invalid. The board contends that it has no discretion to accept a *347 nonmatching signature on a nominating petition, even if the signatories come forward to authenticate their signatures.
{¶ 8} In State ex rel. Scott v. Franklin Cty. Bd. of Elections, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 19, we confronted a similar issue, and, in accordance with the evidence presented as to the authenticity of the questioned signature, directed the board to count it as valid.
{¶ 9} The “Nominating Petition and Statement of Candidacy for Township Office” used by Crowl, which was prescribed by the secretary of state, Form No. 3-R (06-10), provides a space for the elector’s “signature.” Eight voters did precisely what the form instructed them to do: they provided a signature. The form did not ask the electors to provide his or her “legal mark,” nor did it alert them that a mismatch could invalidate their signatures.
{¶ 10} Boards of elections have a statutory duty to certify the validity of petitions. R.C. 3501.11(K). This court has long held that these county boards must confirm that signatures are genuine. State ex rel. Yiamouyiannis v. Taft, 65 Ohio St.3d 205, 209, 602 N.E.2d 644 (1992). The design of Form No. 3-R strongly suggests that the secretary’s interpretation of R.C. 3501.11(K) — to which we accord great deference — obliges the boards to confirm the authenticity of signatures, but it does not impose on them the responsibility to enforce R.C. 3501.011 by policing petition signatures for nonconforming legal marks. See Scott at ¶ 27 (Kennedy, J., concurring in judgment only).
{¶ 11} In this case, the board of elections admitted that the eight signatures in question were genuine. Because the board admitted that the signatures were genuine, it abused its discretion when it denied Crowl a place on the ballot.
Writ granted.
Pfeifer, O’Donnell, Kennedy, and O’Neill, JJ., concur.
O’Connor, C.J., and French, J., concur in judgment only.
Lanzinger, J., dissents.