[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Simonetti v. Summit Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-8115.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8115

THE STATE EX REL. SIMONETTI *v.* SUMMIT COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Simonetti v. Summit Cty. Bd. of Elections, Slip Opinion No. 2017-Ohio-8115.]*

*Elections—Mandamus—R.C. 3513.261—Nominating petition and statement of candidacy—Candidate's signature must be placed on petition paper before electors sign it—Writ sought to compel board of elections and secretary of state to place candidate's name on general-election ballot—Writ denied.*

(No. 2017-1293—Submitted October 3, 2017—Decided October 6, 2017.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} The issue in this original action seeking a writ of mandamus is whether the name of relator, Joseph A. Simonetti, must be placed on the November 7, 2017 ballot as a candidate for a city-council position. Because respondents, the

Summit County Board of Elections and Secretary of State Jon Husted, did not abuse their discretion or clearly disregard applicable law by refusing to certify Simonetti's candidacy, we deny the writ.

**Facts**

{¶ 2} On August 3, 2017, Simonetti filed with the board a nominating petition for the office of "City Council Ward 5" in the city of Fairlawn.  For Simonetti's name to be placed on the ballot, his nominating petition needed to contain at least 50 valid signatures of Fairlawn electors.  His nominating petition consisted of four separate petition papers that, together, contained 66 signatures.

{¶ 3} R.C. 3513.261 required each petition paper to include a statement of candidacy signed by Simonetti.  A statement of candidacy, among other things, identifies the office a candidate seeks and declares his or her candidacy for the office.  R.C. 3513.261.  The statute requires the candidate's signature to be placed on the petition paper "before the signatures of electors are placed on it."  This requirement ensures that petition signers have adequate notice of the candidate's identity and protects against the use of petitions for a candidacy other than the one intended by the signers.  *See State ex rel. Wilson v. Hisrich*, 69 Ohio St.3d 13, 15, 630 N.E.2d 319 (1994) (involving a similar requirement in R.C. 3513.09).

{¶ 4} Simonetti's fourth petition paper, which contained 21 electors' signatures, is at issue in this case.  The statement of candidacy on that petition paper was signed by Simonetti and dated July 28, 2017, while all 21 signatures on the petition paper were dated before July 28.  Simonetti's signature on each of the other three petition papers was dated June 28, 2017.  On August 4, an employee of the board notified Simonetti that his nominating petition might be rejected because it appeared that he had signed the statement of candidacy on the fourth petition paper after the electors had signed the nominating petition.  Without the signatures on the fourth petition paper, Simonetti had only 45 valid signatures—five short of the required number.  Simonetti did not attempt to collect more signatures on a new

petition paper to cure the shortfall even though five days remained before the filing deadline.

{¶ 5} The board considered whether to certify Simonetti's nominating petition at its August 17 meeting. At the meeting, Simonetti presented his own affidavit and affidavits from the first five electors who had signed the fourth petition paper. He also provided sworn and unsworn statements at the meeting.

{¶ 6} In his affidavit, Simonetti stated that he signed the statement of candidacy on the fourth petition paper before any electors signed the nominating petition and that he inadvertently dated the statement "July 28, 2017 rather than June 28, 2017." But before being placed under oath at the board meeting, he expressed less certainty about the date he had actually signed the statement:

> Board Member: On what date did you sign the petition that is dated July 28th?
>
> Mr. Simonetti: I'm assuming it was July 28th.
>
> Board Member: I'm talking about the one that is July 28th and not June 28th.
>
> Mr. Simonetti: No, there are three with June 28th and the last one is July 28th.
>
> Board Member: Yes, I'm sorry. I am talking about the one you signed on July 28th. My question is: The one that is dated July 28th, if we take it at face value, was too late; when did you sign that statement?
>
> Mr. Simonetti: Prior to going out and collecting the rest of the signatures.
>
> Board Member: Was it the same date that you signed the other three?

Mr. Simonetti: Quite honestly, I don't remember if it was June 28th and I just put July down, or if it was July 28th, or if it was July 23rd.

It's just a mistake in the date. It wasn't that I signed it after, it was signed prior to me going out and collecting the names.

{¶ 7} When placed under oath, Simonetti again said unequivocally that he signed the statement of candidacy before any electors signed the fourth petition paper:

Mr. Simonetti: I can tell you that that form was filled out prior to me circulating the petition. Whether I put the incorrect date down is one thing. I know that I did not sign it after I circulated the petition.

The dates started on July 25th; the last date is July 27th. I am positive that I signed that and completed it prior to me circulating that petition, just like I did the other three petitions.

{¶ 8} The affidavits of the five electors who signed the fourth petition paper each stated that the elector signed the nominating petition with the clear understanding that Simonetti was the candidate for the Ward 5 council position and that the elector was "not mislead [sic] in any way by the Petition as drafted." Notably, the electors did not state in their affidavits that Simonetti's signature was on the statement of candidacy when they signed the nominating petition.

{¶ 9} After the board's vote resulted in a tie, the matter was referred to the secretary of state under R.C. 3501.11(X). The secretary of state found that Simonetti's evidence was contradictory because the explanation he provided in his affidavit did not match his oral statements to the board. The secretary of state also found that the electors' affidavits did not clearly support Simonetti's position because

4

they did not state that Simonetti's signature was on the statement of candidacy when they signed the nominating petition. The secretary of state rejected Simonetti's nominating petition on September 11.

{¶ 10} Simonetti filed this original action in this court on September 15 and a motion seeking leave to amend his complaint on October 2.

## Analysis

### *Motion for leave to amend*

{¶ 11} In his brief, the secretary of state argues that we should dismiss Simonetti's complaint because it does not comply with S.Ct.Prac.R. 12.02(B)(2), which requires an affidavit supporting an original-action complaint to "be made on personal knowledge, setting forth facts admissible in evidence, and showing affirmatively that the affiant is competent to testify to all matters stated in the affidavit." "We have routinely dismissed original actions, other than habeas corpus, that were not supported by an affidavit expressly stating that the facts in the complaint were based on the affiant's personal knowledge." *State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 24. An affidavit that is made "to the best of" an affiant's "personal knowledge and information" does not satisfy S.Ct.Prac.R. 12.02(B)(2), because that type of statement does not make clear "which allegations are based on personal knowledge and which allegations are based simply on information." *State ex rel. Commt. for the Charter Amendment for an Elected Law Dir. v. Bay Village*, 115 Ohio St.3d 400, 2007-Ohio-5380, 875 N.E.2d 574, ¶ 12-13 (applying the same affidavit requirement in former S.Ct.Prac.R. X(4)(B)).

{¶ 12} Here, Simonetti provided a "Verification Statement" with his original complaint affirming that the allegations in the complaint are "based upon my personal knowledge and information." Because Simonetti qualified his affidavit in this way, he did not comply with S.Ct.Prac.R. 12.02(B)(2).

**{¶ 13}** Simonetti, however, filed a motion for leave to file an amended complaint in response to the secretary of state's argument. He also filed an amended complaint that includes an amended verification statement that satisfies S.Ct.Prac.R. 12.02(B)(2). We ordinarily afford relators an opportunity to cure their noncompliance with S.Ct.Prac.R. 12.02(B)(2). *See State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 14; Civ.R. 15(A). We therefore grant Simonetti's motion.

*Laches*

**{¶ 14}** The board argues that Simonetti's claim is barred under the doctrine of laches. We have applied the doctrine of laches in elections cases, which require relators to exhibit "[e]xtreme diligence and promptness." *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 113, 712 N.E.2d 696 (1999). "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

**{¶ 15}** In asserting laches, the board alleges that Simonetti delayed either four or six weeks before filing this action, suggesting that he should have sought some type of relief immediately after the board employee notified him of a possible defect in his nominating petition on August 4 or perhaps after the board rendered a tie vote concerning the petition on August 17. But whether Simonetti delayed unreasonably cannot be measured from those dates, because he was not aggrieved until the secretary of state broke the tie—thereby excluding him from the ballot—on September 11. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 16 (noting that the relator did not have a claim to assert until the secretary of state removed his name from the ballot).

**{¶ 16}** Here, only four days elapsed between the final decision and the filing of this action. We reject the board's laches argument, because Simonetti acted with the requisite diligence and promptness required in election cases. *See State ex rel. Cornerstone Developers, Ltd. v. Greene Cty. Bd. of Elections*, 145 Ohio St.3d 290, 2016-Ohio-313, 49 N.E.3d 273, ¶ 20 (rejecting a laches argument that was based on a delay of four business days); *State ex rel. Ebersole v. Delaware Cty. Bd. of Elections*, 140 Ohio St.3d 487, 2014-Ohio-4077, 20 N.E.3d 678, ¶ 26 (same).

*Merits of mandamus claim*

**{¶ 17}** To prevail in this mandamus case, Simonetti must prove, by clear and convincing evidence, that he has a clear legal right to have his name placed on the November 7 ballot, that the board and the secretary of state are under a clear legal duty to provide that relief, and that he has no adequate remedy in the ordinary course of the law. *Linnabary* at ¶ 13. Because of the proximity of the November 7 general election, Simonetti has established that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

**{¶ 18}** "In extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Because there is no evidence or argument of fraud or corruption here, the dispositive issues are whether the board or the secretary of state abused their discretion or clearly disregarded applicable law by rejecting Simonetti's candidacy.

**{¶ 19}** The central question in this case is factual: Did Simonetti sign the statement of candidacy that appears on the fourth petition paper before the electors signed the nominating petition? When reviewing a factual determination in this context, we will not substitute our judgment for that of the secretary of state or a

board of elections when there is conflicting evidence on the issue. *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 185, 724 N.E.2d 771 (2000).

{¶ 20} Simonetti contends that the secretary of state and the board abused their discretion because, he claims, the only evidence in the record shows that he signed the statement of candidacy before he collected signatures from electors. But Simonetti disregards the fourth petition paper itself, which appears on its face to be invalid because the date associated with Simonetti's signature is later than the dates associated with the electors who signed the fourth petition paper. To be sure, Simonetti provided an affidavit and sworn and unsworn statements explaining that he signed the statement of candidacy before collecting those electors' signatures, but this merely supports the conclusion that the secretary of state and the board were faced with conflicting evidence.

{¶ 21} Simonetti has not shown that the secretary of state and the board abused their discretion in according less weight to Simonetti's explanatory evidence than to the competing evidence. Indeed, as the secretary of state pointed out when rendering his vote, Simonetti's explanation was inconsistent. He first claimed in his affidavit that he signed the statement of candidacy on June 28, but at the board meeting, he stated that it could have been June 28, July 23, or perhaps some other date, even seemingly conceding (apparently by mistake) that it may have been July 28. In fact, his inconsistency persists in this litigation. In his original complaint, Simonetti seemed to abandon June 28 in favor of July 23 by twice alleging that that was the actual date he signed the fourth petition paper. But his amended complaint now omits one of those references to July 23, simply alleging at that point that July 28 was "inadvertently" listed. He does not assert any specific date that he signed the petition paper in his briefs.

{¶ 22} In his reply brief, Simonetti suggests that his inconsistency concerning the actual date of signing is unimportant, because he unequivocally testified that he signed the statement of candidacy before collecting the electors'

signatures. But even if he did not need to prove the specific date on which he signed the statement, the changes in the details of his explanation are relevant. It was reasonable for the board and the secretary of state to consider the inconsistencies in Simonetti's specific statements in determining the veracity of his more general, self-serving statements.

{¶ 23} The secretary of state and the board properly attributed weight to the fourth petition paper itself, which, on its face, indicates a failure to comply with R.C. 3513.261. Simonetti has not provided clear and convincing evidence that the secretary of state or the board abused their discretion by crediting less weight to the contrary evidence. We therefore deny the writ.

*Simonetti's remaining arguments*

Unity of the nominating petition

{¶ 24} In denying the writ, we reject Simonetti's argument that this case presents a legal question about whether the "unitary nature" of his nominating petition was "destroyed" when he inadvertently misstated the date on the fourth petition paper. Simonetti relies on *State ex rel. Beck v. Casey*, 51 Ohio St.3d 79, 554 N.E.2d 1284 (1990), in which we held that "subscribing different dates to *forms* of the declaration of candidacy does not destroy the essential unity of the declaration" (emphasis sic), *id*. at 80-81, but that holding does not support his position. Simonetti's fourth petition paper was not defective because its date differed from the date listed on the first three; its defect was that it indicated that Simonetti had signed his statement of candidacy *after* the electors had signed that petition paper. Simonetti's reliance on our holding in *Beck*, therefore, is misplaced.

Substantial compliance

{¶ 25} We also reject Simonetti's argument that his name should be placed on the ballot because he substantially complied with R.C. 3513.261.[1] In this

---

[1] Although Simonetti alleges that he substantially complied with both R.C. 3513.09 and 3513.261, we disregard his reference to R.C. 3513.09, because that statute, though similar to R.C. 3513.261,

respect, citing *State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 28, he contends that public policy favors "free competitive elections" over "absolute compliance with each technical requirement in the petition form."

{¶ 26} "[T]he general rule is that, unless there is language allowing substantial compliance, election statutes are mandatory and must be strictly complied with." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 15. Here, R.C. 3513.261 provides that a nominating petition "shall be substantially in the form prescribed in this section." Thus, the statute requires only substantial compliance with the prescribed "form" of the nominating petition, but the statute contains no language regarding substantial compliance as to other matters.

{¶ 27} When considering questions of substantial compliance with an election statute, we examine whether the requirement at issue "serves a public interest and a public purpose." *Stern v. Cuyahoga Cty. Bd. of Elections*, 14 Ohio St.2d 175, 180, 237 N.E.2d 313 (1968). As previously discussed, the requirement that a candidate sign the statement of candidacy on the petition paper before the nominating petition is circulated advances two public interests: it guarantees adequate notice of the candidate's identity to electors and ensures that the petition will not be used for a candidacy other than the one intended by the signers. *See Wilson*, 69 Ohio St.3d at 15, 630 N.E.2d 319. These interests do not relate merely to the "form" of a nominating petition but go to its very substance. Simonetti's substantial-compliance argument, therefore, is unavailing.

Motion for leave granted

and writ denied.

---

applies to candidacy petitions for primary elections, which are not at issue in this general-election case.

10

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Stark & Knoll Co., L.P.A., and Harry A. Tipping, for relator.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Peter W. Nischt and John F. Galonski, Assistant Prosecuting Attorneys, for respondent Summit County Board of Elections.

Michael DeWine, Attorney General, and Heather L. Buchanan and Steven T. Voigt, Assistant Attorneys General, for respondent Ohio Secretary of State Jon Husted.

_____