[Cite as *State ex rel. Martin v. Tuscarawas Cty. Bd. of Elections*, 2019-Ohio-4236.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel.<br>SHEILA MARTIN | : | JUDGES: |
| | : | |
| Petitioner | : | Hon., John W. Wise, PJ. |
| | : | Hon., Patricia A. Delaney, J. |
| | : | Hon., Earle E. Wise Jr., J. |
| -vs- | : | |
| | : | |
| TUSCARAWAS COUNTY BOARD<br>OF ELECTIONS | : | Case No. 2019 AP 09 0040 |
| | : | |
| | : | |
| | : | |
| Respondent | : | O P I N I O N |


CHARACTER OF PROCEEDING:                 Writ of Mandamus


JUDGMENT:                                          Denied


DATE OF JUDGMENT ENTRY:              October 11, 2019


APPEARANCES:

For Petitioner:

James F. Mathews
Tonya J. Rogers
BAKER, DUBLIKAR, BECK,
WILEY and MATHEWS
400 South Main Street
North Canton, Ohio  44720

For Respondent:

Robert R. Stephenson II
Assistant Prosecuting Attorney
Tuscarawas County, Ohio
125 East High Avenue
New Philadelphia, Ohio  44663

*Delaney,J.*

{¶1}   Relator, Sheila Martin, filed a Complaint for Writ of Mandamus against Respondent, Tuscarawas County Board of Elections ("Board of Elections"), on September 23, 2019. Ms. Martin asks the Court to compel the Board of Elections to place her name on the ballot for the General Election scheduled for November 5, 2019, for the office of member of the Board of Education for the New Philadelphia School District. The issue presented in Ms. Martin's writ is whether the Board of Elections properly rejected her Nominating Petition due to an insufficient number of signatures.

{¶2}   In June of 2019, Ms. Martin visited the Board of Elections and requested a Nominating Petition and Statement of Candidacy to be on the ballot for the school board seat. The Board of Elections provided Ms. Martin with a packet containing three part-petitions that allowed for a maximum of 60 signatures. The Board of Elections admittedly incorrectly advised Ms. Martin that she only needed 25 valid signatures.

{¶3}   Ms. Martin thereafter returned to the Board of Elections and requested additional part-petitions stating she wanted to obtain at least 100 signatures. The Board of Elections again provided incorrect information and advised Ms. Martin that she could not submit more than 75 signatures. Thereafter, Ms. Martin obtained only 75 signatures and did not seek more signatures based on the advice she received from the Board of Elections.

{¶4}   On August 5, 2019, Ms. Martin submitted her Nominating Petition and Statement of Candidacy to the Board of Elections. She received a letter, on August 22, 2019, from the Board of Elections, indicating her Nominating Petition was rejected due to an insufficient number of signatures. The Board of Elections rejected 3 signatures. When

Ms. Martin inquired about the rejection of her petition, the Board of Elections informed her that she was actually required to obtain a minimum of 75 signatures and since 3 of the signatures were invalid, she did not have the required number of signatures to have her name placed on the ballot.

{¶5} The Board of Elections rejected the following signatures: (1) Craig Fahrney, address listed was not the same as his registered address; (2) Jessie Jones, not a registered voter; and (3) Randall Stephens, name printed on petition and not signed. Ms. Martin checked the Ohio Secretary of State's website and confirmed that Craig Fahrney was a registered voter at the address he listed on the petition. When Ms. Martin notified the Board of Elections of this error, the board indicated that Mr. Fahrney's signature could not be accepted because he printed his name rather than signing. As to Jessie Jones, Ms. Martin also confirmed that she was a registered voter. When Ms. Martin notified the Board of Elections of this fact, the board informed her that it was too late to place her name on the ballot.

{¶6} Thereafter, the Board of Elections conducted a protest hearing on September 3, 2019, and upheld its original decision to reject Ms. Martin's Nominating Petition. Ms. Martin filed this original action and maintains the Board of Elections invited the error concerning the insufficient number of signatures by informing her that she was required to submit no more than 75 signatures. Although not specifically addressed in the Board of Elections' brief, Ms. Martin's evidence, which included an audio recording of the protest hearing, indicates the board acknowledged that for years it had been informing candidates of the incorrect number of signatures needed for the New Philadelphia School District board of education race. Ms. Martin contends the board's misconduct and abuse

of discretion deprived her of the opportunity to be on the November 5, 2019 General Election ballot.

{¶7} To prevail on her writ, Ms. Martin must prove by clear and convincing evidence that she has a clear legal right to have her name placed on the ballot, that the Board of Elections is under a clear legal duty to provide the requested relief, and that Ms. Martin has no adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶13. We find Ms. Martin established she has no adequate remedy in the ordinary course of the law due to the nearness of the general election. *See State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶10.

{¶8} "In extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶11. Here, there is no evidence or argument regarding fraud or corruption. Instead, the dispositive issues are whether the Board of Elections abused its discretion or clearly disregarded applicable law by rejecting Ms. Martin's Nominating Petition. For the reasons that follow, we find it did not.

{¶9} The first issue to be addressed is whether the Board of Elections properly rejected the printed names of Mr. Fahrney and Mr. Stephens. The Ohio Supreme Court recently addressed the issue of printed versus a cursive signature on a Nominating Petition in *Village of Georgetown v. Brown Cty. Bd. of Elections*, ____ Ohio St.3d ____, 2019-Ohio-3915, ____ N.E.3d ____. In *Georgetown*, the village filed a writ of prohibition

challenging the board of elections' decision to place an issue on the ballot regarding the reduction of a tax levy for the village's fire services. *Id.* at ¶8. The village maintained 12 signatures were automatically invalid because they were required to be in cursive. *Id.* at ¶19. In support of its argument, the village referenced *State ex rel. Green v. Casey*, 51 Ohio St.3d 83, 554 N.E.2d 1288 (1990), which required a valid signature to be in cursive. *Id.* at ¶20. "However, Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, 1157, effective September 26, 2003, added a new section to the election statutes, R.C. 3501.011, which eliminated the cursive requirement this court discerned in *Green.*" *Georgetown* at ¶20. Current law defines a signature on a petition as the elector's "cursive-style legal mark written in that person's own hand." R.C. 3501.011(A). However, there is an exception to the cursive requirement – if an elector's "legal mark," as found on the elector's voter registration card, is a printed signature, then the petition signature may also be printed. R.C. 3501.011(C).

{¶10} In *Georgetown*, the Court explained that "[b]oards of elections have a statutory duty to '[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers.' R.C. 3501.11(K)(1). As part of that duty, the boards are required to compare petition signatures with voter-registration cards to determine if the signatures are genuine." *Georgetown* at ¶23, citing *State ex rel. Yiamouyiannis v. Taft*, 65 Ohio St.3d 205, 209, 602 N.E.2d 644 (1992).

{¶11} However, the Revised Code does not require the board of elections to enforce R.C. 3501.011 by policing petition signatures for nonconforming legal marks. The *Georgetown* Court noted that in *State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 144 Ohio St.3d 346, 2015-Ohio-4097, 43 N.E.3d 406, once the board of elections determined

the mismatched signatures were genuine, based on affidavits from the signatories, it would have been an abuse of discretion to invalidate them. *Id.* This is so because "the duty of the boards of elections is to establish the authenticity of the *elector*, not the signature." (Emphasis sic.) *Id.* at ¶24. Thus, because the village in *Georgetown* submitted evidence that the 12 printed names on the petition belonged to the eligible electors, the Court found the board would have abused its discretion if it had disregarded that evidence and found the signatures invalid. *Id.* at ¶25.

{¶12} Here, Ms. Martin submitted affidavits from Craig Fahrney and Randall Stephens. Each affiant indicates he voluntarily signed Ms. Martin's Nominating Petition for Ms. Martin to be placed on the ballot for the office of member of the board of education for the New Philadelphia City School District for the 2019 General Election; that each completed the information on the Nominating Petition, including the signature line; and that each signed Ms. Martin's Nominating Petition with their genuine signature. Although Ms. Martin did not submit these two affidavits, to the Board of Elections, at the protest hearing, this does not preclude their consideration here. In *State ex rel. Burroughs v. Summit Cty. Bd. of Elections*, 145 Ohio St.3d 220, 2015-Ohio-4122, 48 N.E.3d 515, the Ohio Supreme Court granted a writ of mandamus upon consideration of evidence (*i.e.* affidavits) presented for the first time to the Court even though this evidence was not presented to the board of elections prior to the filing of the writ. *Id.* at ¶6.

{¶13} We find the affidavits of Craig Fahrney and Randall Stephens establish they are the electors who signed Ms. Martin's Nominating Petition even though they did so by printing their names. The Board of Elections presented no evidence to refute this fact.

Therefore, under the *Crowl* decision, we find the Board of Elections abused its discretion when it found Fahrney's and Stephens' signatures to be invalid.

{¶14} The second issue concerns the signature of Jesse Jones. Ms. Jones signed Ms. Martin's petition on July 16, 2019. At that time, she listed her voting residence as "440 Front Ave." The Board of Elections initially rejected Ms. Jones' signature because it could not identify her as an elector. The board now contends the Nominating Petition does not contain Ms. Jones' current address and on this basis, the board rejected her signature. The board's evidence includes Ms. Jones' "Certificate of Registration[,]" which indicates her residence is "308 SEA GULL LN SE[.]" Ms. Martin submitted an affidavit from Ms. Jones that states, in pertinent part at paragraph three: "I previously resided at 440 Front Ave., New Philadelphia, Tuscarawas County, Ohio. I have since moved and the address with the board of elections reflects my current address."

{¶15} R.C. 3501.38(A) specifies requirements for petitions, including the qualification date for petition signers. This statute provides: "* * * The facts of qualification shall be determined as of the date when the petition is filed." *See also State ex rel. Oster v. Lorain Cty Bd. of Elections*, 93 Ohio St.3d 480, 484, 756 N.E.2d 649 (2001). ("[I]t is evident that the qualification date specified in R.C. 3501.38(A) is the applicable date, *i.e.*, the facts of qualification of the persons signing referendum petitions are determined on the date when the petition is filed, not on the dates that the petition is signed.") Further, R.C. 3501.38(9C) indicates, "[t]he voting address given on the petition shall be the address appearing in the registration records at the board of elections."

{¶16} Thus, Ms. Martin was required to establish, by clear and convincing evidence, that on the date she filed her Nominating Petition, August 5, 2019, Ms. Jones

was a registered voter at 440 Front Avenue and subsequently changed her address to the Sea Gull Lane address after Ms. Martin filed her Nominating Petition. Stipulated supplemental evidence filed by the parties indicates that on August 5, 2019, Ms. Jones' registered address, with the Board of Elections, was the 308 Sea Gull Lane SE address, and not the 440 Front Avenue address as indicated on the petition.  In fact, the Sea Gull Lane address was her address from April 18, 2015 until September 23, 2019.  Therefore, Ms. Jones was not a qualified elector under R.C. 3501.08.  Ms. Martin has not established, by clear and convincing evidence, the Board of Elections abused its discretion or acted in clear disregard of applicable legal provisions when it rejected Ms. Jones' signature.

{¶17}  Further, adding to the confusion is the fact that the Board of Elections' employees admittedly provided Ms. Martin incorrect information regarding the number of signatures needed for her Nominating Petition and the total number of signatures permitted to be filed. Board employees advised Ms. Martin that she only needed 25 valid signatures and no more than 75 signatures when in fact, she actually needed 75 valid signatures. Understandably, Ms. Martin relied on this incorrect information. However, this misinformation does not provide a basis for us to grant Ms. Martin's petition for writ of mandamus. Case law is clear that "the mistaken advice or opinion of an employee of the board of elections does not estop the board from removing a candidate's name from the ballot. *State ex rel. Svete v. Geauga Cty. Bd. of Elections* (1965), 4 Ohio St.2d 16, 33 O.O.2d 139, 212 N.E.2d 420; *State ex rel. Shaw v. Lynch* (1991), 62 Ohio St.3d 174, 176–177, 580 N.E.2d 1068, 1070." *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections*, 65 Ohio St.3d 186, 189, 602 N.E.2d 631 (1992).

{¶18} Finally, Ms. Martin makes an "invited error" argument. She contends the Board of Elections provided misinformation and essentially invited her to have an insufficient number of signatures on her Nominating Petition and improperly advised her that she could not submit more than 75 signatures. Ms. Martin cites no case law applying the "invited error" doctrine in such a manner. Further, the only case the Court found that applied the invited error doctrine involved a situation where relators provided the board of elections with incorrect information regarding a referendum petition for a zoning amendment and the board relied on it in rejecting the petition. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 181, 80 Ohio St.3d 176 (1997). The Ohio Supreme Court found that relators invited the error that they were attempting to address by way of the writ when they submitted documentary evidence that supported the board's decision. *Id.* at 181.

{¶19} For these reasons, we find the Tuscarawas County Board of Elections did not abuse its discretion or act in clear disregard of applicable legal provisions when it concluded Ms. Martin did not have the required number of signatories on her Nominating Petition. Ms. Martin's writ of mandamus is denied.

{¶20} The clerk of courts is hereby directed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58(B).

{¶21} WRIT DENIED.

{¶22} COSTS TO PETITIONER.

{¶23} IT IS SO ORDERED.

By, Wise, P.J.

Delaney, J. and

Wise, J. concur.