[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. DeBlase v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-1823.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1823

THE STATE EX REL. DEBLASE ET AL. *v*. OHIO BALLOT BOARD ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. DeBlase v. Ohio Ballot Bd.*, Slip Opinion No. 2023-Ohio-1823.]

*Mandamus—Initiative petitions—Ohio Ballot Board did not abuse discretion or disregard applicable law in determining that petition at issue proposes only one constitutional amendment, as required by R.C. 3505.062(A)—Writ denied.*

(No. 2023-0388—Submitted May 2, 2023—Decided June 1, 2023.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} This action arises from an initiative petition proposing a constitutional amendment titled "The Right to Reproductive Freedom with Protections for Health and Safety." According to its text, the proposed amendment to the Ohio Constitution would protect an individual's "right to make and carry out one's own

reproductive decisions," including but not limited to decisions related to abortion before fetal viability.

{¶ 2} Respondents, the Ohio Ballot Board and its members, determined under R.C. 3505.062(A) that the initiative petition proposes a single constitutional amendment. Relators, registered Ohio voters Margaret DeBlase and John Giroux, seek a writ of mandamus to compel respondent Secretary of State Frank LaRose to convene a meeting of the ballot board and to compel the board to vacate its decision and instead determine that the petition contains more than one proposed amendment. Relators' requested writ would also order the ballot board to divide the petition into multiple petitions that each contain only one proposed amendment and to certify the approval of each of the petitions to the attorney general as multiple single-amendment proposals.

{¶ 3} We deny the writ. Because the petition at issue in this case contains a single constitutional amendment, the ballot board did not abuse its discretion or disregard applicable law.

## I. FACTUAL AND PROCEDURAL BACKGROUND
### A. The Constitutional-Amendment Process

{¶ 4} Article II, Section 1a of the Ohio Constitution reserves to the people the right to amend the Constitution by initiative. Under R.C. 3519.01(A), proponents of a constitutional amendment must submit a preliminary initiative petition and summary thereof to the attorney general. The petition must contain the signatures of at least 1,000 qualified electors of the state. *Id.* If the attorney general determines that the summary is "a fair and truthful statement" of the proposed amendment, the attorney general "shall so certify" and forward the petition to the ballot board for its approval. *Id.*

{¶ 5} After receiving a certified preliminary initiative petition from the attorney general, the ballot board must examine it within ten days "to determine whether it contains only one proposed * * * constitutional amendment so as to

2

enable the voters to vote on a proposal separately." R.C. 3505.062(A). If the board determines that the petition contains only one proposed amendment, "it shall certify its approval to the attorney general." *Id.* The attorney general shall then file with the secretary of state a verified copy of the proposed amendment and the summary of it certified by the attorney general. *Id.* and R.C. 3519.01(A). Conversely, if the ballot board determines that a petition contains more than one proposed amendment, "the board shall divide [it] into individual petitions containing only one proposed * * * amendment so as to enable the voters to vote on each proposal separately and certify its approval to the attorney general." R.C. 3505.062(A). If the ballot board divides a petition, "the petitioners shall resubmit to the attorney general appropriate summaries for each of the individual petitions arising from the board's division." *Id.*

{¶ 6} After receiving resubmitted summaries of divided petitions, the attorney general shall review them within ten days to determine whether they are fair and truthful statements of the proposed amendments. R.C. 3519.01(A). If they are, the attorney general shall file with the secretary of state a verified copy of each of the proposed amendments together with their summaries and the attorney general's certification of each. *Id.*

{¶ 7} For a proposed amendment to qualify for the ballot, the petition must contain valid signatures from at least 44 of Ohio's 88 counties, in an amount equal to at least 5 percent of the total votes cast in the last gubernatorial election in those 44 counties. Ohio Constitution, Article II, Sections 1a and 1g. Statewide, the number of signatures must equal at least 10 percent of the total votes cast for governor in the last gubernatorial election. *Id.*, Sections 1a and 1g. If the signature requirements are met, the secretary of state shall include the proposed amendment on the ballot at the next general election occurring more than 125 days after the petition is filed. *See id.*, Section 1a. In this case, to be eligible for inclusion on the

November 7, 2023 ballot, the petitioners must file a petition containing a sufficient number of valid signatures with the secretary of state by July 4.

**B. The Proposed Amendment**

**{¶ 8}** On February 21, 2023, the attorney general received a petition containing a proposed constitutional amendment titled "The Right to Reproductive Freedom with Protections for Health and Safety" and a summary of the proposed amendment. The petition indicates that respondents Nancy Kramer, Aziza Wahby, David Hackney, Jennifer McNally, and Ebony Speakes-Hall (collectively, "the committee") are the members of a committee designated to represent the petitioners. The full text of the proposed amendment reads:

Be it Resolved by the People of the State of Ohio that Article I of the Ohio Constitution is amended to add the following Section:

Article I, Section 22. The Right to Reproductive Freedom with Protections for Health and Safety

A. Every individual has a right to make and carry out one's own reproductive decisions, including but not limited to decisions on:

1. contraception;

2. fertility treatment;

3. continuing one's own pregnancy;

4. miscarriage care;

5. abortion.

B. The State shall not, directly or indirectly, burden, penalize, prohibit, interfere with, or discriminate against either:

1. An individual's voluntary exercise of this right or

2. A person or entity that assists an individual exercising this right,

unless the State demonstrates that it is using the least restrictive means to advance the individual's health in accordance with widely accepted and evidence-based standards of care.

However, abortion may be prohibited after fetal viability. But in no case may such an abortion be prohibited if in the professional judgment of the pregnant patient's treating physician it is necessary to protect the pregnant patient's life or health.

C.  As used in this Section:

1.  "Fetal viability" means "the point in a pregnancy when, in the professional judgment of the pregnant patient's treating physician, the fetus has a significant likelihood of survival outside the uterus with reasonable measures.  This is determined on a case-by-case basis."

2.  "State" includes any governmental entity and any political subdivision.

D.  This Section is self-executing.

{¶ 9} On March 2, the attorney general certified that the summary submitted with the petition was a fair and truthful statement of the proposed constitutional amendment.  The attorney general submitted his certification to the secretary of state under R.C. 3519.01(A).

{¶ 10} On March 13, the ballot board held a meeting under R.C. 3505.062(A) to consider whether the petition contains a single proposed constitutional amendment.  At the meeting, the committee's counsel addressed the board and explained that each provision of the proposed amendment relates "to the common purpose of the right to make and carry out one's own reproductive decisions."  The board also heard testimony from relator Giroux.  Giroux expressed his view that the proposed amendment is misleading because "[i]f [the amendment]

is about one issue, th[e] amendment is about abortion," yet, Giroux claimed, the amendment purports to cover reproductive decisions other than abortion.

{¶ 11} The ballot board voted five to zero to determine that the petition contains one proposed amendment to the Ohio Constitution. After the board's vote, the secretary of the board issued a letter to the attorney general under R.C. 3519.01(A) certifying that the board had "determined that the proposed initiative petition contains a single proposed constitutional amendment."

{¶ 12} Relators commenced this action on March 20, naming as respondents the ballot board, its members (Secretary of State LaRose, Theresa Gavarone, Paula Hicks-Hudson, William N. Morgan, and Elliot Forhan), and the committee. They ask us to issue a writ of mandamus ordering:

1. the secretary of state to convene a meeting of the ballot board at the earliest possible date;

2. the board to vacate its March 13 determination and instead issue a determination that the petition contains more than one proposed amendment to the Ohio Constitution;

3. the board to divide the petition into individual petitions, each containing only one proposed amendment;

4. the board to certify the approval of each of the individual petitions containing only one proposed amendment to the attorney general.

{¶ 13} The committee filed an unopposed motion to expedite respondents' answers to the complaint and the parties' submission of evidence and merit briefs. We granted the motion and set an expedited schedule. 169 Ohio St.3d 1477, 2023-Ohio-997, 205 N.E.3d 558. Respondents filed answers, and the parties submitted their evidence and merit briefs in accordance with the expedited schedule.

## II.  ANALYSIS

### A.  The Committee

{¶ 14} Although relators' complaint names the members of the committee as respondents, relators actually seek relief only from the ballot board and its members.  Relators' complaint does not request that the committee be ordered to take any action, nor does their merit brief argue that we should issue a writ of mandamus against the committee.  We therefore deny the writ as to the committee. *See State ex rel. Walker v. LaRose*, 164 Ohio St.3d 569, 2021-Ohio-825, 174 N.E.3d 735, ¶ 13-15 (denying the writ as against respondents who could not provide the relief sought in the complaint).

### B.  Claim Against Ballot Board and Its Members

{¶ 15} To be entitled to a writ of mandamus against the ballot board, relators must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the board's part to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law.  *State ex. rel. Husted v. Brunner*, 123 Ohio St.3d 119, 2009-Ohio-4805, 914 N.E.2d 397, ¶ 11.  The third element is satisfied in this case because there is no right to appeal the board's determination.  *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.  As to the first two elements, absent evidence of fraud or corruption (which relators do not allege here), the standard is whether the board abused its discretion or clearly disregarded applicable law in determining that the proposed initiative petition contains a single constitutional amendment.  *Id.* at ¶ 30.

### 1.  Ballot board did not disregard applicable law

{¶ 16} In *Ohio Liberty Council*, we established the rule for deciding whether an initiative petition proposing an amendment to the Ohio Constitution contains one or more amendments.  At issue in that case was a proposed amendment to "preserve the freedom of Ohioans to choose their health care and health care coverage."  *Ohio Liberty Council* at ¶ 3.  The first three sections of the proposed

amendment stated that no federal, state, or local law or rule shall (1) compel any person, employer, or healthcare provider to participate in a healthcare system, (2) prohibit the purchase or sale of health care or health insurance, or (3) impose a penalty or fine for the sale or purchase of health care or health insurance. The final section of the proposed amendment stated, "This section does not affect laws or rules in effect as of March 19, 2010; affect which services a health care provider or hospital is required to perform or provide; affect terms and conditions of government employment; or affect any laws calculated to deter fraud or punish wrongdoing in the health care industry." *Id.* at ¶ 11, quoting proposed Ohio Constitution, Article I, Section 21(D).

{¶ 17} The ballot board certified to the attorney general that the petition contained *two* proposed constitutional amendments. *Id.* at ¶ 16, 19. The board determined that the proposal contained one amendment " 'deal[ing] with the freedom to choose health care and health care coverage' " and a second one " 'deal[ing] with the governance and oversight of the health care and health insurance industries.' " *Id.* at ¶ 20, quoting the board's certification letter. The relators in *Ohio Liberty Council* sought a writ of mandamus to compel the secretary of state and the ballot board to certify the board's approval of the proposed amendment to the attorney general as written: as *one* constitutional amendment. *Id.* at ¶ 21.

{¶ 18} We analogized the separate-petition requirement of R.C. 3505.062(A) to the separate-vote requirement for legislatively initiated constitutional amendments under Article XVI, Section 1 of the Ohio Constitution. *Id.*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 41. In interpreting the separate-vote requirement, we had held that a legislative proposal consists of one amendment to the Constitution if each of its subjects relates to some *general* purpose or object. *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 34. We had also observed in *Willke* that "[c]ourts have generally taken a 'liberal [view] in interpreting what such a single general purpose or object

may be.' " (Brackets sic.) *Id.*, quoting *State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 146, 226 N.E.2d 116 (1967).

{¶ 19} Applying that standard, we held that the proposal in *Ohio Liberty Council* contained only one amendment because all the sections bore "some reasonable relationship to the single general purpose of preserving Ohioans' freedom to choose their health care and health-care coverage as it existed on March 19, 2010, with certain exceptions." *Ohio Liberty Council* at ¶ 43. We therefore held that the ballot board had abused its discretion and disregarded R.C. 3505.062 in concluding that the initiative consisted of two proposed amendments rather than one. *Id.* at ¶ 45.

{¶ 20} Notwithstanding *Ohio Liberty Council*, relators argue that the initiative petition at issue here includes multiple constitutional amendments because it groups a right to abortion "under the rubric of 'one's own reproduction decisions' and on par with 'contraception,' 'fertility treatment,' and 'miscarriage care' (and whatever other rights are being established)." Abortion cannot be grouped with other reproductive rights, argue relators, because abortion is "a unique act" that is "inherently different" from all other intimate personal decisions. Relators quote language from the United States Supreme Court's abortion jurisprudence as support for this proposition. *See Roe v. Wade*, 410 U.S. 113, 159, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (abortion is "inherently different from marital intimacy, or bedroom possession of obscene material, or marriage, or procreation, or education," with which its earlier personal-privacy cases were concerned); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 852, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("Abortion is a unique act"); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. __, 142 S.Ct. 2228, 2258, 213 L.Ed.2d 545 (2022), quoting *Roe* at 159 and *Casey* at 852 (abortion is "sharply distinguishe[d]" from other intimate personal rights because it "destroys * * * 'potential life' ").

{¶ 21} Relators' argument is not consistent with the *Ohio Liberty Council* standard. The *Ohio Liberty Council* test does not ask whether individual provisions of a proposed amendment relate to one another; rather, the inquiry is whether an amendment's provisions relate to a single general purpose. And in this case, the proposed amendment meets that standard because each provision relates to the single general purpose of protecting a person's reproductive rights.

{¶ 22} Section A of the proposed amendment states: "Every individual has a right to make and carry out one's own reproductive decisions, including but not limited to decisions on" contraception, fertility treatment, continuing one's own pregnancy, miscarriage care, and abortion. Thus, the first provision of the proposed amendment specifies a general purpose (protecting an individual's right to make reproductive decisions) and then specifies five types of reproductive decisions that would be covered by the amendment. The other three sections relate to Section A: Section B prohibits the state from interfering with the exercise of the rights identified in Section A, Section C defines terms related to reproductive rights, and Section D makes the amendment self-executing. Accordingly, each of the provisions in the proposed amendment bears some reasonable relationship to the single general purpose of protecting reproductive rights. Even if we accept relators' argument that abortion is a "unique" act that is "inherently different" from other reproductive decisions, the decision to obtain an abortion is still a reproductive decision.

{¶ 23} In addition, relators argue that regardless of whether the proposed amendment's provisions relate to a "single general purpose," the initiative contains multiple amendments because it encompasses both (1) broad and general language encompassing a new constitutional right and (2) specific details in the nature of a legislative enactment, such as "detailed definitions" of the terms contained in the proposed amendment. Thus, according to relators, the proposal contains "two

separate and discrete purposes—one constitutional, the other legislative or statutory." We reject this argument as well.

**{¶ 24}** The only requirement under R.C. 3505.062(A) is that the provisions of a proposed amendment be related to a single general purpose. *See Ohio Liberty Council*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, at ¶ 57. Relators identify no authority in the Ohio Constitution (or our jurisprudence interpreting it) that limits a proposed amendment to so-called "broad and general" principles, as opposed to details that might be deemed "legislative or statutory" in nature. Indeed, the Ohio Constitution contains several provisions that contain specific details that arguably go beyond broad and general principles. *See*, *e.g.*, Article I, Section 9 (establishing the general principle of the right to bail but also specifying detailed considerations for determining the amount); Article I, Section 10a (providing basic rights for victims of crime but also detailing specific procedures); Article XI, Sections 3 through 7 (specific requirements for drawing General Assembly districts); Article XIX, Section 2 (specific requirements for drawing congressional districts); Article XV, Section 6(C)(3) (specifying the distribution of gross casino revenue in the state).

**{¶ 25}** For the foregoing reasons, we conclude that the ballot board did not disregard applicable law in deciding that the initiative petition contains one proposed constitutional amendment.

### 2. Ballot board did not abuse its discretion

**{¶ 26}** Relators also argue that the ballot board abused its discretion by failing to undertake any "substantive inquiry, assessment, analysis, or discussion of the proposed constitutional amendment" at its March 13 meeting. According to relators, the "summary and perfunctory manner" in which the board made its decision was an abuse of discretion that warrants the writ they request.

**{¶ 27}** An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*,

121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 12. There is no such showing on the record here. The ballot board conducted a formal meeting, heard public comment from relator Giroux and counsel for the committee, and voted on the matter. Though relators complain that the board failed to issue a formal decision explaining its rationale, the board had no duty to provide one. Nor is there any statutory requirement that the board conduct any particular type of proceeding before announcing its decision. The board performed its statutory duty to determine whether the initiative petition contains one proposed amendment, which it could reasonably determine from the face of the document.

## IV. CONCLUSION

{¶ 28} For the foregoing reasons, we conclude that the ballot board did not abuse its discretion or disregard applicable law in determining that the initiative petition at issue proposes only one constitutional amendment. We therefore deny the writ.

Writ denied.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., concurs in judgment only, with an opinion joined by DEWINE and DETERS, JJ.

FISCHER, J., concurs in judgment only.

_____

**KENNEDY, C.J., concurring in judgment only.**

{¶ 29} I agree that respondent Ohio Ballot Board did not abuse its discretion or disregard applicable law when it determined that the initiative petition at issue in this case proposes a single constitutional amendment. I write separately, however, because the lead opinion adheres to this court's decision in *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410. In my view, *Ohio Liberty Council* improperly grafted a "single-subject rule" onto the people's power to propose amendments to the Ohio Constitution. Article

II, Section 1g of the Ohio Constitution provides that one amendment may be submitted on one petition and that each amendment is a separate ballot issue, but it does not limit a proposed amendment to a single subject, purpose, or object. The petition in this case proposes one amendment, and the ballot board was not permitted to divide it into multiple petitions; for these reasons, the writ of mandamus sought by relators, Margaret DeBlase and John Giroux, must be denied.

{¶ 30} Our state Constitution is founded on the fundamental principle that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary." Article I, Section 2, Ohio Constitution.

{¶ 31} When the people ratified the Ohio Constitution, they reserved in Article II, Section 1 the power of the people to propose an amendment to the Constitution by initiative petition. Article II, Section 1a provides:

> When a petition signed by [10 percent] of electors, shall have been filed with the secretary of state, and verified as herein provided, proposing an amendment to the constitution, the full text of which shall have been set forth in such petition, the secretary of state shall submit for the approval or rejection of the electors, the proposed amendment, in the manner hereinafter provided, at the next succeeding regular or general election in any year occurring subsequent to one hundred twenty-five days after the filing of such petition.

{¶ 32} The general requirements and procedures that apply to all initiative and referendum petitions on statewide issues are established by Article II, Section 1g of the Ohio Constitution, which states: "The * * * provisions of this section shall

be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved." Once sufficient signatures have been collected and verified, Section 1g requires that the secretary of state place the proposed amendment to the Constitution on the ballot, with the ballot language to be "prescribed by the Ohio ballot board in the same manner, and subject to the same terms and conditions, as apply to issues submitted by the general assembly pursuant to Section 1 of Article XVI of [the] constitution."

{¶ 33} Article XVI, Section 1 states that ballot language must "properly identify the substance of the proposal to be voted upon" but it "need not contain the full text nor a condensed text of the proposal." Article XVI, Section 1 also directs the ballot board to prepare an explanation of the proposed amendment and to certify the ballot language and the explanation to the secretary of state. The ballot board also may prepare arguments for and against the proposal. *Id*. The extent of the ballot board's constitutional authority in the initiative-petition process is therefore to prescribe the ballot language, prepare an explanation, and certify both to the secretary of state.

{¶ 34} As noted above, Article II, Section 1g authorizes the General Assembly to pass laws that facilitate the right of the people to propose amendments to the Constitution, but those laws may not limit or restrict the people's exercise of those powers. To this end, the General Assembly enacted R.C. 3505.062, which provides that if the ballot board determines that an initiative petition contains more than one proposed constitutional amendment, then the board shall "divide the initiative petition into individual petitions containing only one proposed * * * constitutional amendment so as to enable the voters to vote on each proposal separately."

{¶ 35} My separate opinion in *State ex rel. Ohioans for Secure & Fair Elections v. LaRose*, 159 Ohio St.3d 568, 2020-Ohio-1459, 152 N.E.3d 267 ("*Ohio*

*SAFE*") (Kennedy, J., concurring in judgment only), explained how this court's precedent construing these provisions has improperly superimposed a "single-subject" requirement onto the people's power to propose constitutional amendments. This court's caselaw began with an analysis of Article XVI, Section 1, which empowers the General Assembly to propose amendments to the Constitution but requires the proposed amendments to be submitted in a manner that allows the electors to vote on each amendment separately. The court then analogized this separate-vote requirement to Article II, Section 15(D), which states that "[n]o bill shall contain more than one subject." In this way, the court treated the separate-vote requirement as restricting the General Assembly to proposing constitutional amendments that relate to a single subject or underlying object or purpose. *Ohio SAFE* at ¶ 77-82 (Kennedy, J., concurring in judgment only).

{¶ 36} Although neither Article II, Section 1a nor Article II, Section 1g contains a single-subject rule, this court in *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, "layered language from the single-subject rule of Article II, Section 15(D) onto the separate-vote requirement of Article XVI, Section 1 and then used both to burden the people's right to propose amendments to the Constitution," *Ohio SAFE* at ¶ 86 (Kennedy, J., concurring in judgment only). It did this by requiring an amendment proposed by the people to be "restricted to a single subject." *Id.* at ¶ 92. However, the framers knew how to require that a proposal be limited to a single subject, as they included such a requirement in the single-subject rule for legislation in Article II, Section 15(D). "But neither Article XVI, Section 1 nor Article II, Sections 1a or 1g expressly limits a proposed amendment to the Constitution to a single subject, purpose, or object. * * * The framers could have provided that no amendment shall contain more than one subject, but they did not, and we should not add words to the Constitution in the guise of interpreting it." *Ohio SAFE* at ¶ 89 (Kennedy, J., concurring in judgment only).

**{¶ 37}** The question, then, is not whether the proposed amendment has a single subject, purpose, or object. Rather, it is whether the proposal is a single amendment, since Article II, Section 1g "provides that one amendment may be submitted on one petition and that each amendment is a separate ballot issue," *Ohio SAFE* at ¶ 90.

**{¶ 38}** In *State ex rel. Greenlund v. Fulton*, we explained that the word "amendment" when used in connection with the state Constitution has "a dual meaning, the particular one to be determined by its relationship." 99 Ohio St. 168, 179, 124 N.E. 172 (1919). We continued:

> An amendment to the Constitution, which is made by the addition of a provision on a new and independent subject, is a complete thing in itself, and may be wholly disconnected with other provisions of the Constitution; such amendments, for instance, as the first ten amendments of the Constitution of the United States. * * *
>
> Then there is the use of the word "amendment" as related to some particular article or some section of the Constitution, and it is then used to indicate an addition to, the striking out, or some change in, that particular section.

*Id*. Therefore, "an amendment is both the addition of a wholly new provision to the Constitution or the changes made to an existing article or section." *Ohio SAFE*, 159 Ohio St.3d 568, 2020-Ohio-1459, 152 N.E.3d 267, at ¶ 94 (Kennedy, J., concurring in judgment only).

**{¶ 39}** The proposed amendment at issue in this case is one stand-alone amendment. It would create a wholly new provision in the Ohio Constitution: Article I, Section 22. That should end the analysis, because in ratifying Article II, Sections 1a and 1g, the people did not impose any express limitation on the style

16

or format that an amendment must take and neither this court nor the General Assembly has the power to restrict the people's power to propose constitutional amendments by creating such a limit. Rather, the ultimate decision on what the Constitution should say and how it should say it belongs to the people in exercising their right to ratify or reject an amendment at the ballot box.

{¶ 40} Consequently, the ballot board did not abuse its discretion or disregard applicable law when it determined that the initiative petition at issue here contains one proposed amendment to the Ohio Constitution. For this reason, I agree that the relators in this case have failed to establish their entitlement to the requested writ of mandamus. However, because I would hold that a proposed amendment is not limited to a single subject, object, or purpose, I concur in judgment only.

DEWINE and DETERS, JJ., concur in the foregoing opinion.

_____

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relators.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Ann Yackshaw, and Michael A. Walton, Assistant Attorneys General, for respondents Ohio Ballot Board, Frank LaRose, Theresa Gavarone, Paula Hicks-Hudson, William N. Morgan, and Elliot Forhan.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Katie I. Street; and ACLU of Ohio Foundation and Freda J. Levenson, B. Jessie Hill, and Carlen Zhang-D'Souza, for respondents Nancy Kramer, Aziza Wahby, David Hackney, Jennifer McNally, and Ebony Speakes-Hall.

_____