[Cite as *In re H. L.*, 2024-Ohio-1600.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| | | No. 23AP-94 |
| [H.L., | : | (C.P.C. No. 18JU-13817) |
| T.L., Mother, | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on April 25, 2024

**On brief:** *Yeura Venters*, Public Defender, and *Robert D. Essex*, for appellant.

**On brief:** *Tyler W. Dunham*, for appellee Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Appellant, T.L., mother of H.L., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and placing H.L. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

I. **Facts and Procedural History**

{¶ 2} This case involves FCCS's request for permanent custody of H.L., born November 14, 2018. FCCS filed a complaint on November 29, 2018 when H.L. was 15 days old, alleging H.L. to be an abused, neglected, and dependent child. FCCS stated in the complaint that mother has four other children not in her care due to ongoing substance

abuse and mental health issues. According to the complaint, H.L. was born testing positive for marijuana.

{¶ 3} The trial court issued a temporary order of custody to FCCS on December 4, 2018. At the February 21, 2019 trial, mother did not appear and the parties proceeded uncontested as to the complaint. The trial court found H.L. to be an abused, neglected, and dependent child and awarded temporary court commitment to FCCS. Thereafter, on February 28, 2019, the trial court approved and adopted a case plan for mother.

{¶ 4} Subsequently, on September 27, 2019, FCCS filed a motion for permanent court commitment ("PCC") of H.L. The matter was continued multiple times due to both the COVID-19 pandemic and difficulty locating mother for service. Eventually, the trial court scheduled a trial for the PCC motion on March 30, 2021. Mother appeared on that date, but the trial was continued again, on mother's motion, until March 22, 2022.

{¶ 5} FCCS then filed an amended motion for PCC on April 6, 2021, including an allegation that H.L. had been in the custody of FCCS for 12 or more months of a consecutive 22-month period.

{¶ 6} On February 23, 2022, the trial court appointed new counsel for mother. Both mother and her newly appointed counsel appeared for trial on March 22, 2022; however, due to the recency of counsel's appointment, the trial court again continued the matter, scheduling trial for August 25, 2022. On August 25, 2022, mother and counsel appeared for trial but the trial court granted another continuance due to the illness of counsel for FCCS.

{¶ 7} Ultimately, the matter came for trial on December 6, 2022. Mother did not appear for the hearing, though mother's counsel was present. Counsel for mother did not have an explanation for mother's absence, noting mother did not have a phone, and requested a continuance. Additionally, counsel for mother requested the appointment of a guardian ad litem for mother, indicating counsel had made an informal request for a guardian ad litem at some prior time. Counsel for mother stated mother "has a head injury that she gives like a very sketchy history of * * * [s]o, it's - - there's some organic reasons why her behavior is the way it is." (Dec. 6, 2022 Tr. at 7-8.) The trial court denied counsel's request for both the continuance and the appointment of a guardian ad litem, noting the request for the guardian ad litem was made very late in a case that has been pending for

over two years, and proceeded to trial. Following the testimony of the FCCS caseworker and the guardian ad litem for the child, the trial court took the matter under advisement. In a January 25, 2023 decision and judgment entry, the trial court granted the PCC motion, terminated mother's parental rights, and placed H.L. in the permanent custody of FCCS. Mother timely appeals.

## II. Assignments of Error

{¶ 8} Mother assigns the following two assignments of error for our review:

> [1.] The trial court abused its discretion and committed reversible error by denying the appellant's request for a reasonable continuance in violation of her Due Process rights guaranteed by the United States and Ohio Constitutions.

> [2.] The trial court abused its discretion and committed reversible error by denying appellant's counsel's requests for the appointment of a guardian a[d] litem on her behalf in violation of R.C. 2151.281(C) and Juv.R. 4(B)(3). This denial resulted in the violation of the appellant's Due Process rights guaranteed by the United States and Ohio Constitutions.

## III. First Assignment of Error – Continuance

{¶ 9} In her first assignment of error, mother argues the trial court abused its discretion in failing to grant a continuance and proceeding to the permanent custody hearing when mother was not present.

{¶ 10} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). However, these rights are not absolute, and a parent's natural rights are subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interest of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8.

{¶ 11} A trial court may grant permanent custody if it determines by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), " 'such relief is in the best interest of the child.' " *In re G.E.H.*, 10th Dist. No. 15AP-966, 2016-Ohio-3535, ¶ 52,

quoting *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 9. On appeal, we will not reverse a trial court's decision in a permanent custody case unless it is against the manifest weight of the evidence. *In re I.R.*, 10th Dist. No. 04AP-1296, 2005-Ohio-6622, ¶ 4, citing *In re [A.-J.]*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. Judgments in permanent custody proceedings are not against the manifest weight of the evidence "when all material elements are supported by competent, credible evidence." *J.T.* at ¶ 8.

{¶ 12} Mother does not argue the trial court's decision to award permanent custody to FCCS was against the manifest weight of the evidence. Rather, mother argues the trial court erred when it failed to grant her request for a continuance and proceeded to trial in her absence.

{¶ 13} An appellate court will not reverse a denial of a continuance in a PCC case absent an abuse of discretion. *In re J.B.*, 10th Dist. No. 08AP-1108, 2009-Ohio-3083, ¶ 26, citing *In re B.G.W.*, 10th Dist. No. 08AP-181, 2008-Ohio-3693, ¶ 23. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 173 Ohio St.3d 191, 2023-Ohio-1823, ¶ 27. Further, " '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *J.B.* at ¶ 26, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 14} In reviewing whether a trial court abused its discretion in denying a continuance, an appellate court weighs any potential prejudice to the movant against the court's right to control its docket and the public's interest in the efficient dispatch of justice. *State v. Woods*, 10th Dist. No. 09AP-667, 2010-Ohio-1586, ¶ 24; *In re M.K.*, 10th Dist. No. 09AP-1141, 2010-Ohio-2194, ¶ 14. In evaluating a request for a continuance, a court considers: (1) the length of the requested delay; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors, depending

on the unique circumstances of each case. *Woods* at ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *J.B.* at ¶ 26.

{¶ 15} Considering all the circumstances surrounding mother's request for a continuance, we conclude the trial court did not abuse its discretion in denying mother's request for a continuance on the day of trial. When mother failed to appear for trial, counsel for mother stated he had been unable to make contact with mother and did not know mother's whereabouts or reasons for not attending. *See In re A.P.*, 10th Dist. No. 08AP-186, 2009-Ohio-438, ¶ 5-6 (trial court did not abuse its discretion in denying request for continuance where the request is made the day of the hearing after parent failed to appear and counsel is unable to give a reason for the parent's absence or explain the parent's whereabouts).

{¶ 16} Pursuant to R.C. 2151.414(A)(2), the trial court is to hold the PCC hearing no later than 120 days after the agency files the PCC motion except for "good cause" shown for a reasonable continuance. By the time of the December 6, 2022 trial date, the PCC motion had been pending for more than 1160 days. *See In re J.C.*, 10th Dist. No. 10AP-766, 2011-Ohio-715, ¶ 46 (a trial court does not abuse its discretion in denying a request for a continuance when the PCC hearing is already past the 120-day deadline contained in R.C. 2151.414(A)(2)). Moreover, by the time of the PCC hearing, H.L. had been in FCCS's custody for more than four years and had the potential for adoptive placement with her current foster caregivers, the only foster caregivers she has had over the duration of her time in FCCS custody. *See In re J.M.*, 10th Dist. No. 15AP-234, 2015-Ohio-3988, ¶ 26 (a trial court may consider the children's length of time in foster care and potential for adoptive placement as a relevant factor in determining whether to grant or deny a continuance).

{¶ 17} Additionally, mother does not argue that if she had appeared at trial, she would have provided testimony that would have impacted the trial court's ultimate decision regarding permanent custody. This court has repeatedly affirmed a trial court's denial of a continuance in permanent custody cases where there is no showing that granting the continuance likely would have changed the outcome of the case. *In re K.R.*, 10th Dist. No. 22AP-51, 2023-Ohio-359, ¶ 18, citing *In re J.J.*, 10th Dist. No. 21AP-166, 2022-Ohio-907, ¶ 24 ("putative father makes no argument that a delay in proceedings" would have enabled

him to offer "any additional testimony or evidence that would have had an impact on the trial court's ultimate decision regarding permanent custody"); *In re K.J.*, 10th Dist. No. 17AP-457, 2018-Ohio-471, ¶ 22-23 ("mother still does not explain her failure to make any substantial progress toward reunification with her children during the more than two years that the case had been open with FCCS," and "even if mother had been able to testify to newly revealed progress on her case plan, it is unlikely that such information would have changed the outcome of the case"), citing *B.G.W.* at ¶ 27 (no abuse of discretion in denying continuance request where the continuance likely would not have changed the outcome of the case); *A.P.* at ¶ 5-6 (no abuse of discretion in denying continuance request where mother made no attempts to contact the court or her counsel to explain her whereabouts and did not show that a continuance would have "remedied the many ways appellant failed to comply with even the basics of the case plan filed by FCCS").

{¶ 18} At trial, both the caseworker for FCCS and the guardian ad litem for H.L. recommended the court grant FCCS's motion for permanent custody. The caseworker testified that mother did not make any meaningful progress on her case plan, never completed the psychological assessment, did not complete parenting classes after H.L.'s birth, did not consistently appear for drug tests, and failed to maintain any contact with the caseworker at all after August 2022. Additionally, the caseworker stated mother was removed from H.L.'s visitation schedule for a period of time due to mother's failure to attend visits. At one point, mother went nearly one year without visiting H.L., and the caseworker testified there is not a bond between mother and H.L. Moreover, the guardian ad litem testified H.L. has a familial bond with her foster family. The guardian ad litem remained concern about mother's substance abuse issues and mental health. Ultimately, the guardian ad litem noted mother has had ample time to engage in services and make progress on her case plan but has failed to do so. Thus, the testimony of both the caseworker and the guardian ad litem supported the trial court's finding that granting FCCS's motion for permanent custody was in the best interest of H.L.

{¶ 19} On appeal, mother does not challenge either the opinions of the caseworker or the guardian ad litem or the facts they testified to in support of those opinions. Mother also does not argue that any testimony of hers would have refuted evidence presented at trial demonstrating the award of PCC to FCCS was in H.L.'s best interest. Thus, mother

fails to show a continuance was likely to have changed the disposition of the case. *See K.R.* at ¶ 20 (no abuse of discretion in denying father's request for continuance where father did not appear for trial, did not challenge the evidence presented at trial, and did not indicate he would have provided any contrary evidence to refute the evidence at trial had a continuance been granted).

{¶ 20} Having reviewed the record and considered the *Unger* factors outlined above, we conclude the trial court did not abuse its discretion in denying mother's motion for continuance. Thus, we overrule mother's first assignment of error.

## IV. Second Assignment of Error – Appointment of Guardian ad Litem

{¶ 21} In her second and final assignment of error, mother argues the trial court abused its discretion in denying her request for the appointment of a guardian ad litem.

{¶ 22} Both R.C. 2151.281(C) and Juv.R. 4(B)(3) require a court to appoint a guardian ad litem " 'to protect the interests of an incompetent adult in a juvenile proceeding where the parent appears to be mentally incompetent.' " *In re K.J.D.*, 10th Dist. No. 12AP-652, 2013-Ohio-610, ¶ 46, quoting *In re Baby Girl Baxter*, 17 Ohio St.3d 299, 232 (1985); R.C. 2151.281(C) ("[i]n any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent * * * the court shall appoint a guardian ad litem to protect the interest of that parent"); Juv.R. 4(B)(3) ("[t]he court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when * * * [t]he parent * * * appears to be mentally incompetent"). The determination of whether a parent appears mentally incompetent is within the discretion of the trial court, and an appellate court reviews a trial court's decision whether to appoint a guardian ad litem for the parent for an abuse of discretion. *In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 46, citing *In re K.R.*, 11th Dist. No. 2015-T-0008, 2015-Ohio-2819, ¶ 27.

{¶ 23} A trial court considering whether to appoint a guardian ad litem for a parent must determine whether the parent appears to be mentally incompetent. *In re H.M.B.*, 7th Dist. No. 16 BE 0004, 2016-Ohio-5702, ¶ 68, citing *K.R.* at ¶ 27. Other appellate districts considering the matter "have interpreted 'incompetent' to mean a person who cannot understand the nature of, and participate in, the proceedings." *In re F.S.*, 12th Dist. No. CA2020-08-011, 2021-Ohio-345, ¶ 44, quoting *In re D.C.H.*, 9th Dist. No. 22648, 2005-

Ohio-4257, ¶ 8; *In re C.C.*, 11th Dist. No. 2016-T-0050, 2016-Ohio-7447, ¶ 122; *In re H. Children*, 1st Dist. No. C-190630, 2020-Ohio-774, ¶ 32-33.

{¶ 24} Having reviewed the record, we find the trial court did not abuse its discretion in denying mother's motion to appoint a guardian ad litem on her behalf. Though counsel for mother requested the appointment of a guardian ad litem at the start of trial, counsel did not provide specific support for his request other than his general statement that "there's good reason for - - for her to have a personal guardian ad litem on the case," and that "she has a head injury that she gives like a very sketchy history of." (Dec. 6, 2022 Tr. at 5, 7-8.) Moreover, during the hearing, the caseworker testified about interactions with mother and noted that while mother sometimes exhibited memory problems during in-person communication, mother was able to appear for scheduled appointments as long as she was notified of the appointments in writing. The caseworker additionally noted she was never provided any medical documentation of an accident that would have caused mother's brain injury. The caseworker testified mother was able to understand what was expected of her on the case plan. Further, the guardian ad litem explained that although mother has substance abuse and mental health issues, she did not present as having cognitive difficulties and understood what was expected of her under the case plan. Specifically, the guardian ad litem stated she would not characterize mother as having memory issues but "more defiance issues * * * [l]ike she just didn't want to do what was required even though she could articulate what that was." (Dec. 6, 2022 Tr. at 88.) Neither mother nor her counsel provided any medical documentation to substantiate her traumatic brain injury or to demonstrate any limitations mother suffered as a result. Thus, having reviewed the record, we find the trial court did not abuse its discretion in denying mother's motion for the appointment of a guardian ad litem made the day of trial. We overrule mother's second and final assignment of error.

**V. Disposition**

{¶ 25} Based on the foregoing reasons, the trial court did not abuse its discretion in denying mother's request for a continuance and proceeding with the permanent custody proceedings in her absence or in denying mother's motion for the appointment of a guardian ad litem. Having overruled mother's two assignments of error, we affirm the

judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

BEATTY BLUNT and LELAND, JJ., concur.

———————————————